## HAMMOND CLOCK CO. v. ELECTRIC AUTO–LITE CO.

### No. 7728.

Circuit Court of Appeals, Sixth Circuit.
June 6, 1939.

Clifford C. Bradbury, of Chicago, Ill. (Clifford C. Bradbury, Benjamin F. Wupper, and Casper W. Ooms, all of Chicago, Ill., on the brief), for appellant.

E. B. Whitcomb, of Toledo, Ohio (Braselton, Whitcomb & Davies, E. B. Whitcomb, and H. O. Ernsberger, all of Toledo, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a decree holding invalid Claims 9, 16 and 17 of Patent 1,835,505, issued to Liner on December 8, 1931. The suit below consolidated two actions, one involving Hammond Patents 1,719,805, 1,-796,649, and 1,797,912, in which the May Company was defendant, and one against appellee involving the Liner Patent only. The District Court held the Hammond Patents valid and infringed, and no appeal has been taken from this portion of the decree. It held that the Liner Patent did not make the disclosure required by Title 35, § 33, U.S.C., 35 U.S.C.A. § 33, and was hence invalid.

The Liner Patent is concerned with non-self-starting synchronous electric clocks. Electric clocks driven by synchronous motors had been in use since 1895, having originated with the "Helios" clocks installed in Cologne, Germany. These clocks proved unsatisfactory because of the great difficulty in starting the motors and in keeping them running. The main principle of the synchronous motor is that its speed is set definitely by the frequency of the alternating current, that is, by the number of cycles per second. It was difficult for the layman to spin the motor at exactly the right speed of rotation, and in the right phase rotation with the alternating current to start the mechanism. Also phase variations in the alternating current caused by connections or disconnections of equipment onto the power line, and similar disturbances, caused the motors to get out of step and to stop. While improvements over the Helios clocks, such as the Telechron clocks (self-starting devices), had been invented, they were expensive to construct and operate. The Hammond Patents involved in this suit, held valid by the Court of Appeals of the Seventh Circuit in Schiff v. Hammond Clock Co., 69 F.2d 742, and held valid by the District Court herein, solved the problem of starting the motor through the dissipation of energy by inertia discs or oil chambers which dampened the oscillation of the rotor while it was coming into synchronism. These clocks were inexpen-

sive and disclosed the desired features of easy starting and of protection against mysterious stoppages arising from sudden changes in the supply lines. Liner claimed to have improved upon Hammond in a synchronous motor which dispensed with inertia and friction means and, he asserted, achieved the desired result through the natural inertia of the rotor coupled with friction attained through substantially endwise movement of the rotor in its bearings, thus eliminating certain parts.

Appellant claims that Liner teaches as three essential elements of his construction the following:

1. The poles on the periphery of the rotor must be skewed or at an angle to the axis of the rotor.

2. The stator must be substantially narrower than the rotor, or vice versa.

3. The rotor shaft must be so mounted as to be capable of substantial endwise movement.

The Liner Patent together with the Hammond Patents were before the court in Schiff v. Hammond Clock Co., supra, a case in which all of the patents were adjudged valid and infringed. So far as validity was concerned, the opinion in that case adopted the findings of the District Court, and the question whether the patentee had complied with the requirements of Title 35, § 33, U.S.C., 35 U.S.C.A. § 33, was in no way considered. In the instant case, the District Court held that an essential feature of the Liner invention is the mounting of the rotor shaft so as to be capable of substantial endwise movement; that the invention would be inoperative without this element, and that it is not properly described in the patent so as to permit a person skilled in the art to construct the Liner device.

End play sufficient to permit the rotor to center itself in the magnetic field was old in the prior art. It is specifically referred to in Stuart, 1,511,538; in Warren, 1,495,936; in Cantono, 645,247, and in Schwartz, 714,824. The references to this feature in the Liner claims are found in 16 and 17, as follows: "the rotor structure having a lateral movement to permit the rotor to take up a free alignment in the field," and "the entire rotor structure having a lateral movement to permit the rotor to take up a free alignment in the field." In the Liner specifications it is stated that a "lateral jerking motion" of the rotor structure as it falls into synchronism will be very readily observed, but at no point is the amount of endwise motion specified. The District Court in its opinion, which under Equity Rule 70½, 28 U.S.C.A. following section 723, was designated as findings of fact and conclusions of law, stated that the demonstrations given in open court showed that a rotor "having merely that amount of endwise motion which would permit the rotor to center itself could sometimes be started. It might be started quite often by one skilled in the art; it could not be started very often by unskilled users of electrical clocks. The demonstration also showed that to make a practical workable device there must be endwise motion in excess of that which merely permitted the rotor to center itself and which was common in the art."

■ Appellant concedes that endwise motion such as merely permits the rotor to center itself in the field is not sufficient to secure the desired result and also is old in the art. It therefore urges that that part of the specifications which refers to the lateral jerking motion clearly states that the endwise motion is greater than that of a rotor simply centering itself. We cannot agree with such a conclusion, particularly in view of the fact that the claims specified lateral movement to permit the rotor to take up a free alignment in the field, that is, enough endwise motion to permit the rotor to center itself. This obviously does not imply a structure capable of having endwise motion in excess of the stated amount. We agree with the District Court that this is not the full, clear, concise, exact statement required by the statute, that the description is inadequate, and that the Liner Patent is invalid. Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163; Zenitherm Co., Inc. v. Art Marble Co. of America, 5 Cir., 56 F.2d 39, 42; Bullock Electric Mfg. Co. v. General Electric Co., 6 Cir., 149 F. 409.

■ In addition, we think that the Liner Patent is invalid because of anticipation. The District Court did not rule upon this question, considering itself bound by the judgment of Schiff v. Hammond Clock Co., supra. But this case presents additional instances of the prior art which were not before the Court of Appeals of the Seventh Circuit, namely, Swiss Patent 96,944, to Brown, Boveri & Co., and Warren Patent

1,495,936, issued in 1922 and 1924, respectively, and both prior to the Liner Patent.

The primary features of the synchronous motor used by Liner were disclosed in the prior art, which was already familiar with disc-shaped rotors having salient polar projections or teeth cooperating with a magnetic field structure which also exhibited salient polar projections or teeth. An example is the patent to Coerper, 527,-195. The feature stressed by appellant that the Liner Patent discloses inequality in the widths of the rotor and stator is old in the art, and commonly incorporated in good electrical engineering practice. The Brown, Boveri & Co. catalogue, issued in 1926, has three illustrations disclosing a rotor and a stator of unequal widths.

As to the skewing of the rotor poles, the Swiss Patent discloses a figure in which the skewing of the pole surface is accomplished by offsetting the three laminations of the rotor relative to each other, and the claim is for a "synchronous motor having salient (integrally protruding) poles for asynchronous starting, distinguished by having its pole shoes skewed a distance no less than the pole gap." This is a clear anticipation with reference to the skewing of the poles on the periphery of the rotor.

As to the feature of end play, appellant concedes that motors with armatures which exhibit end play have been in common use for many years. The Warren Patent refers in the specifications to end play substantially as follows:

In order that the rotor of the motor may axially align itself with the motor field without the necessity of exact mechanical adjustment, it allows for a slight amount of end play of the rotor shaft and the parts carried thereby. To this end and in order to economize in space, the adjacent ends of the shafts are arranged so as to telescope one within the other. One shaft has a hollow portion into which the other shaft may extend. This arrangement allows the rotor automatically to center itself with respect to its field to the most efficient running position; at the same time ample bearing surface of the shaft is assured without lengthening the casing.

Claim 6 of Warren describes among other things a rotor shaft and a power shaft, and in conclusion states that the shafts are "telescoped one within the other in order to allow for end play of one of said shafts." Warren thus describes end play not functionally, as is done by Liner in his reference to the lateral jerking motion, but in terms of construction through the telescoping of the shafts one within the other. It is true that this patent is for an improved motor drive, but it clearly teaches end play.

Appellant is reduced to claiming that the Liner Patent describes an unusual amount of end play to a degree which makes his construction novel. But what this unusual amount is and how it may be figured he does not describe. This could be ascertained only by experimentation. Merely stated as end play, this feature is old in the art. Described as something more than end play, with which the art was familiar, it is not disclosed in the specifications nor claims.

The decree is affirmed.