## ELECTRIC PLUG, Inc., v. VYBRO CORPORATION, Inc.

### No. 171.

District Court, D. Connecticut.

Dec. 6, 1940.

Blair, Curtis & Hayward, of New York City (Daniel L. Morris and James L. Black, Jr., both of New York City, and Edward A. Tyler, of Fairfield, Conn., of counsel), for plaintiff.

Daggett & Hooker, of New Haven, Conn., and Morris Kirschstein, of New York City, for defendant.

INCH, District Judge.

This is the usual patent suit, with the exception that the only issue presented is that of the validity of the patent.

Defendant concedes that if the patent is valid it has been infringed.

The parties are the Electric Plug, Inc., owner of the patent, and Vybro Corporation, Inc., the nominal defendant. However, the defense of this suit has been carried on by the New York Merchandise Company, Inc., and it has been duly stipulated that any judgment entered herein shall be binding upon that company as well as upon plaintiff and Vybro Corporation, Inc.

While it does not relate to the merits of the issue presented, which is solely the validity or invalidity of plaintiff's patent, it sufficiently appears that the plaintiff, for some time before this controversy arose, manufactured and sold substantially its entire output of the metal contact units covered by the Clark patent, to the New York Merchandise Company, Inc., which, in turn, assembled them into housings of its own manufacture for use in connection with Christmas tree lighting sets. Prior to the Clark unit the plaintiff sold and the New York Merchandise Company, Inc., used Christmas tree lighting outfit plugs generally of the type of plaintiff's Exhibit 3-a and 3. After the metal contact units of Clark were brought out by plaintiff they were the type solely used by the New York Merchandise Company, Inc. About two million of these units were thus purchased from plaintiff.

Thereafter the New York Merchandise Company, Inc., apparently believed that the so-called Clark patent of plaintiff was not valid and that it was unnecessary to further purchase these units from plaintiff. Accordingly, it either caused to be incorporated the defendant Vybro Corporation,

Inc., or at least made arrangements with such corporation by which that company thereafter manufactured and sold to it all the metal contact units which the New York Merchandise Company, Inc., would use.

It is plain therefore why the experienced counsel for defendant has avoided the waste of time of the court which might be consumed in taking testimony on the question of alleged infringement for, if the Clark patent is valid, the infringement of the New York Merchandise Company, Inc., is apparent.

We will now consider this Clark patent. It should be borne in mind, in doing so, we are not considering any housing in which the plug contact units may be assembled, for such housing is not involved in any way in this suit.

L. P. Clark, Jr., applied for his patent April 13, 1932, and the patent was granted to him November 6, 1934, U.S. No. 1,979,-958. The file wrapper (defendant's Exhibit B) shows that it was at first rejected on October 4, 1932. Shortly before the expiration of the time allowed, Clark filed an amendment on April 4, 1933, and it was again rejected on July 15, 1933. Again, just before the expiration of the time allowed, Clark amended on January 13, 1934. Finally the application was allowed April 12, 1934. Just before the time expired, the final fee was paid on October 11, 1934, and the patent was granted November 6, 1934. These delays account for the time between the filing of the application and the granting of the patent, while from the file wrapper (defendant's Exhibit B) it is apparent that most of the time was taken up with these rejections and amendments, it also appears that although there was insufficient references from the available prior art found, even from what was used by the examiner we find the statement: "To have a male plug formed of folded over metal is common practice as clearly shown by the French patent, the Austrian patent, Jones or Guillou." File wrapper, pp. 7.

On page 14 of file wrapper this criticism of the examiner is sought to be distinguished by Clark.

Apparently the patent office with lack of available information was more concerned with the difference between Clark and Propp which latter idea of course was not constructed by a single piece of metal bent over on itself, but consisted of two distinct blades. Propp was not only a commercial success but was then and still is in favor with manufacturers including the plaintiff although not as quickly and as easily manufactured and somewhat more expensive.

The alleged invention of Clark, and that which is emphasized by him repeatedly in the specifications and in each of the claims, is a contact unit formed by one piece of metal by bending same over upon itself. This was entirely different from Propp.

Clark says, in his patent, that he has several objects in view, the first mentioned being that the contact unit is formed of one piece of metal which will be inexpensive and reliable providing a positive firm contact, the next to provide for the assembly of contact units with great facility, and lastly to provide a housing having certain desirable characteristics. Lines 1–17, pp. 1, of patent.

The question of housing does not enter into this controversy. The plaintiff never made any housing for the defendant.

Later on in the specifications Clark again indicates his contact unit being formed of one piece of metal where he states: "A pair of plug and contact devices or units are secured in the insulating housing, and each is preferably formed by bending a strip of suitable metal upon itself as at 24, to form a double thickness substantially rigid, plugging portion 25, the two legs being bowed outwardly at the base of the plugging portion as at 26 and 27, and extended in converging relation to form contact portions 28 and 29. Lines 25–33, pp. 2, of patent.

Again in Claim 1, Clark claims, "a single strip of metal bent upon itself, etc.," and in Claim 4, we have the same claim as to a single strip of metal bent upon itself both being for a portion of its length.

Throughout the trial the forming by Clark of a contact unit of one piece is repeatedly referred to, showing that Clark claimed it would prove to be inexpensive, reliable and providing a positive, firm and reliable contact and that such construction could be assembled with greater facility and yet securely held in the insulating housing against displacement and distortion.

The Clark patent has 7 Claims, but plaintiff relies on but two. These are Claims 1 and 4. S.M. pp. 3. These claims are as follows:

(1) "In an electrical plug device, a housing of insulating material having a plug receiving opening, and a metallic plug and

resilient contact unit carried in said housing, comprising a single strip of metal bent upon itself for a portion of its length to form a double thickness plug portion adapted to project from said housing, the two sides of said strip being bent outwardly adjacent the base of said double thickness plug portion symmetrically at each side of the central plane of said plug portion to form outwardly movable springy portions and being extended from said springy portions to form a pair of single thickness contact portions, said contact portions being disposed in relation to said plug receiving opening to receive a plug between them".

(4) "A metallic plug and resilient contact unit for use in an electrical plug device having a plug receiving opening, comprising a single strip of metal bent upon itself for a portion of its length to form a double thickness plug portion and a pair of single thickness extensions integral with said double thickness plug portion and forming opposed contact portions adapted to receive a plug inserted in said plug receiving opening between them, the two sides of said strip being bowed outwardly between said double thickness plug portion and said single thickness contact portions to form springy portions".

Plaintiff claims that defendant attempts to justify the manufacture of the unit disclosed by Clark by building up a structure selected from isolated elements from non-analogous prior patents. There were various types of electric plugs used commercially prior to Clark, each had its deficiency and functional differences.

That Clark's invention discloses the ability to assemble several plugs, the engaging elements of which have satisfactory contact. As the plugs are sold for Christmas tree lighting sets the price must be low for such seasonal demand, therefore the cost of manufacture must be very low and there must be also the ability to manufacture them rapidly. The conducting elements should be loosely mounted and self-aligning, yet the contact must be safe and they should be self-cleaning. Clark claims to provide such a device. Claim 1, is directed to the combination of the housing and the metal electrical conducting members. Claim 4, is directed to the particular construction of one of the metal electrical conducting members regardless of the housing.

That the prior art (plaintiff's Exhibits 3 through 9) indicates a blade and contact making springy portions of two separate pieces of metal riveted together held rigidly in the housing. This required separate operations and a separate assembly consuming about twice the amount of time as the construction of the device of Clark and costs about one-third more. Such construction also tends to a loss of resiliency and possible over-heating and there is an absence of any "wobbling" action which facilitates adjustment of one plug to another.

On the other hand, Clark has "each metal conducting element made by a single strip of metal bent upon itself for a portion of its length to form a double thickness blade portion adapted to project from the housing, the opposite sides of the single strip of metal are then bent outwardly to form movable springy portions from these outwardly bent portions the single thickness contact portions extend and are aligned with the opening into which the complimental blades are inserted.

The testimony of experts for plaintiff shows that it is possible to make this device in one operation of the same piece of metal by automatic machines thus decreasing factory costs to the consumer. That Clark's device will produce a "surface" contact between the contact portions of the conducting elements and the inserted blades instead of a line contact, which is an advantage in overcoming over-heating. Finally that there is a "wobbling" about a "fulcrum" in Clark which makes possible better adjustment when the blade is inserted permitting larger tolerances in both the use and the assembly. In other words, the blades will be able to adjust themselves if any lack of alignment of the contact receiving members at the other end exists. That Clark shows a "shifting Fulcrum point".

Defendant, on the other hand, claims that electrical plug connectors accommodating plug blades of another plug were old in the art when Clark applied for his patent. For instance see Herskovitz, U.S. No. 1,-568,156; Hubbell, U.S. No. 1,617,810; Propp, U.S. No. 1,751,842.

That the Clark discovery relates to a contact unit which may be formed of one piece of metal. That devices which were made up of several parts either soldered or riveted together naturally could not be turned out as cheaply or as fast as a contact unit of one piece. Clark simply presents a strip of metal bent back upon itself, the contact portion ending in a pair of

jaws but producing a one-piece contact unit instead of one of several parts. General Electric Co. v. Yost, etc., 2 Cir., 139 F. 568.

That one-piece units were shown by Knowles several years before Clark. Knowles, No. 1,193,563, granted August 8, 1916. That in this we have a contact unit formed of one piece from a strip of metal bent back upon itself, or as Knowles states, "doubled centrally on itself".

The effort to distinguish between a "line" contact such as Knowles, and a "surface" contact such as claimed by Clark, is insubstantial for in either case the desired purpose is accomplished. That likewise, Noble, in his patent, U.S. No. 1,881,833, granted prior to Clark, discloses to one skilled in the art a contact unit formed from one piece of metal bent back upon itself and in the prior patents of Becket, U.S. No. 2,028,268, and Hill, U.S. No. 2,046,948, granted co-pending with Clark (Milburn Co. v. Davis, etc., Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651), each show this bent back construction.

That none of these references were cited by the examiner in the patent office.

As to the particular shape of the contact portion of Clark, this likewise is indicated clearly by Noble, U.S. No. 1,881,833, and by Ile, U.S. No. 1,684,183, granted September 11, 1928, several years prior to Clark in which Fig. 6 and Fig. 7 of the drawing of Ile discloses substantially the same as Fig. 11, of the Clark patent.

While defendant claims that these references would be sufficient, attention is also called to the contact member (Tag 8) in the specification of the British patent No. 358,486, where the strip of metal is bent back upon itself with the two ends forming spring contact jaws substantially the same as Clark. That this would function exactly in the same way as the Clark unit and shows sufficiently to one skilled in the art clear guidance to accomplish what Clark now claims.

It seems to me therefore that Clark relies for invention, as I have said at the beginning, on a single flat strip of metal bent back upon itself with its bowed-out portions. This undoubtedly made the manufacture of the device cheaper or perhaps better in the manufacture by plaintiff of its unit, but in view of the prior art it was not a discovery but the use of what was already present in the discovery of others

and this is not changed by such things as where the bending action takes place which is also present in Knowles or a loose assembly of the contacts which is also present in Ile. That certain tolerances are inevitable where metal parts are manufactured in mass production without regard to fitting in any particular housing.

Let us more carefully consider these prior art patents. Clark's patent relates to an improvement in an "electrical plug device". In Knowles (application filed 1913, patent granted August 8, 1916, almost sixteen years before Clark) we have shown an "electrical plug device" and the disclosure "each connector 26 or 27 consists of a narrow strip of copper or other suitable metal doubled centrally on itself and formed at one end into an eye 28 or headed stud while the extremities of the metal strip are bent into spring jaws etc." Lines 46–51, pp. 2, of Knowles patent.

In Ile, which is for an "electric plug device" applied for in 1925 and granted September 11, 1928, four years before Clark's application, we find described "in the preferred form a strip as shown in Fig. 7, is bent to form the arms 30 and 31." Lines 1–13, pp. 2, of patent.

In the British patent No. 358,486 (Complete Accepted), October 7, 1931, prior to Clarks' application, which relates to an "electric plug device", we find, "the Tags 8 are made of strips of metal each bent upon itself, the two ends being formed into jaws as shown at 9 to receive the knife contact at the base". Lines 50–53, pp. 3.

The remainder of the assertions on behalf of Clark are either not claimed in the patent, such as the "loose" feature or similar slight differences, or are disclosed to one skilled in the art by the prior patents cited by counsel for the defendant.

On the other hand plaintiff asserts that the prior art relied on by defendant relates to non-analogous devices such as shown in an electric sign, electric range, in multiple current taps, none of which is designed for Christmas tree lighting sets.

That the British patent No. 358,456, shows a telegraph relay with the series of "Tags 8". It has no disclosure of a shifting "fulcrum". The Noble patent, No. 1,881,883, relates to an electric range. There is no possibility of any "wobbling" action. There is no disclosure of a single piece of metal bent back on itself to form contact members and blades for use with

680

the contact members by a complimental plug. The Ile patent, No. 1,684,183, relates to a flat-iron. This likewise lacks a single piece of metal bent back on itself to form contact members and blades nor is there any "wobbly" action or shifting of the "fulcrum". The Knowles patent, No. 1,-193,563, relates to an electric sign. It does not disclose the shifting of a "fulcrum" and does not allow "surface" contact. Same applies to Becket, No. 2,028,268.

That while defendant claims that the use of the word "fulcrum" is not mentioned in the patent, the Claims 1 and 4 cover such disclosure and that this is also disclosed in regard to the so-called "wobbling" which is the opposite from a "forced" fit.

Claim 1 defines a construction predicated upon the shifting of the "fulcrum".

While one may not read into a claim an element which is not present the inventor is entitled to the benefit of all the functions and advantages that flow from the construction disclosed. McCarty et al. v. Lehigh Valley R. Co., 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358.

The mere fact that certain screws are omitted in the claims is insufficient to cause a finding of invalidity. Roberts v. H. P. Nail Co., C.C., 53 F. 916.

While I do not consider this argument sufficient, even if it was dimly disclosed, to take the Clark device out of the prior art, I am unable to read into either of the claims sued on, any such element as "wobbling" or change of "fulcrum". Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163.

There is no question but that plaintiff's device has utility and is an excellent device both from the manufacturing point of view as well as the sale thereof, but we are only concerned with whether or not it represents a "discovery". The art is quite a crowded one and various current taps have been and are still being sold in large quantities for use on Christmas tree lighting outfits by this plaintiff as well as others.

For instance, the Propp device which has been largely sold by plaintiff to the Norma Corporation. Mere commercial success while important is not by itself sufficient evidence of invention. Bryant Electric Co. v. Reno Sales Co., 2 Cir., 16 F.2d 797.

There was an abundance of disclosure available to Clark in regard to "electrical plug devices" as to this making contact blades out of one piece of metal "bent" or "doubled" or "folded" over on itself.

At first glance, taking the making of the device from plaintiff, as the defendant has done, and making it himself, makes one pause and give careful consideration of defendant's right so to do in view of the patent granted to Clark and owned by plaintiff. But after all such patent protection becomes a protection only to the "discoverer" of the alleged new and useful device. Art. 1, Sec. 8, cl. 8, Constitution.

Can it be said that, if Clark's alleged discovery is "a single piece unit", he first discovered it in connection with "electrical plug devices". I do not think so in view of the examples of the prior art not apparently availed of by the patent office, but now submitted by counsel for the defendant. If Clark did not "discover" his idea but was simply first to "use" it in his "particular plug device" he cannot prevent others from also using it. I do not find that Clark made a new combination, in the sense required by the law to exist before protection can be granted, such as where certain elements in prior patents are combined and then produce a new result by reason of such new combination, for, in this particular case, as plainly shown by the prior art, the previous disclosures show the very same purpose and function substantially in the same way in connection with electrical current being carried in electrical plugs.

To say that Clark's plug differs from all the others because it is to be used for "Christmas tree lighting" is insufficient. The efforts to read in elements, if such they are, such as a "loose" or "wobbly" construction or a change of the place of attachment producing a different "fulcrum" which are not found in any of the claims relied on, and which only by a very strained construction is argued to exist somewhere in the specifications or drawings, cannot avail on this record.

The failure to have a monopoly in such a device as Clark's seems to me not to be as serious as plaintiff would have it appear, for it is not likely that many customers would care to undergo the initial expense of installing new machinery, etc., in order to save the slight decreased cost, and even if competition in the sale of plaintiff's plug does arise, the recognized standard quality and skill of a manufacturer such as plain-

tiff, during the past years, is probably more important than any inducement to compete with it.

■ Whether this is so or not, in my opinion, the patent of Clark is invalid, not because it was anticipated or because Clark was not the first user of what he alleges to be his invention, but because he used in the same way and for the same purpose what had already been disclosed in the prior art.

Decree for defendant dismissing the complaint, with costs. Submit findings of fact and conclusions of law, as well as proposed decree.