## HUTCHINSON v. UNIVERSAL MATCH CORPORATION.

### No. 2115.

District Court, E. D. Missouri, E. D.

Sept. 30, 1943.

J. Ralph Barrow, of Akron, Ohio, and Wilton D. Chapman, of St. Louis, Mo., for plaintiff.

Ralph Kalish and Franklin E. Reagan, both of St. Louis, Mo., for defendant.

MOORE, District Judge.

1. The plaintiff, Paul Hutchinson, is a resident of the County of St. Louis, State of Missouri, and is the owner of U. S. Letters of Patent No. 2,283,147 issued to him May 12, 1942.

2. The defendant, Universal Match Corporation, is a corporation of the State of Delaware and maintains a place of business in the County of St. Louis, within the Eastern Judicial District of the State of Missouri.

3. Defendant has for several years prior to the institution of this suit, manufactured and sold devices like plaintiff's Exhibit 13, a combined cigarette package wrapper and match-book holder, also referred to as an advertising wrapper.

4. Plaintiff alleges that Claim 2 of Patent No. 2,283,147 is infringed by the accused device, plaintiff's Exhibit 13. Said claim is in words as follows, to-wit: "2. An elongated blank for providing a stiff protective cover for packages of cigarettes, said blank being of comparatively stiff sheet material and of a width corresponding to the height of a cigarette package and having four transverse score lines to define a central panel, a side panel on each side of the central panel, and a flap on the remote side of each side panel, one

of said flaps having an elongated closed slot therein, said slot being parallel to the longitudinal axis of the blank and being spaced from the top edge of the blank a distance corresponding substantially to the length of a book match package, said slot being of a length substantially corresponding to the width of a book match package, the other flap having a slot therein in alignment with the first-named slot whereby when the blank is folded on its score lines about a cigarette package, the slots will register for the reception of the cover of the book match package."

5. Defendant contends that the accused device is constructed in accordance with U. S. Letters of Patent No. 2,226,736 issued December 1, 1940, to Constantine N. Neklutin, an employee of defendant corporation.

6. Application for plaintiff's patent was filed July 20, 1938. Thereafter, sometime during the three fall months of the year 1938, plaintiff showed his patent application and drawings to an official of defendant corporation with a view to selling the device to defendant. The patent application was in possession of defendant's employees for a number of days and was then returned to plaintiff, the negotiations having been terminated without success.

7. On April 24, 1939, the application for Neklutin patent No. 2,226,736 was filed.

8. The file history of plaintiff's patent reveals the following facts:

September 29, 1938, the original claims, three in number, were rejected. Subsequently Claims 1 and 2 were cancelled; Claim 3 was submitted for reconsideration and again rejected.

March 4, 1939, a new Claim No. 4 was inserted. This was the creature of the Patent Examiner, and it became Claim 1 of the patent after an interference proceeding was had.

September 16, 1940, a new claim, No. 5, was inserted, and Claim 3, with amendments, was re-submitted.

December 6, 1940, Claims 3 and 5 were finally rejected.

April 3, 1942, Claim 8 was inserted. This became Claim 2 of the patent, and is the claim in suit.

9. Plaintiff contends that the revelations contained in his patent application were used by Neklutin in obtaining his patent, and that even though the accused device is constructed according to the teachings of Neklutin's patent, it is nevertheless an infringement of Claim 2 of plaintiff's patent.

10. There is no evidence that plaintiff revealed anything to defendant in confidence except his patent drawings and specifications. The file history indicates that these were incorporated into the Letters Patent without change.

11. The specifications and drawings of plaintiff's patent disclose a device made of stiff paper or cardboard and suitable for folding about a package of cigarettes, capable of being secured in that position and having an opening in the form of a slot through which the cover of a book of paper matches may be threaded.

The patent shows an oblong piece of cardboard scored so as to form fold-lines and divide the piece into five panels. When folded about a cigarette package, four of the panels cover the back, sides and front of said package, respectively, and the fifth overlaps the back panel. A substantial part of the fifth panel is cut away, leaving a tongue (designated "2" in the patent drawing) which fits into a slit (7) in the underlying panel. The engagement of the tongue and slit secures the wrapper in place.

The underlying back panel has a slot (10) cut parallel to the base of the package, wide enough to receive a match-book cover. A match-book cover may be threaded through this slot in order to secure the match-book in place.

12. The accused device, constructed according to the Neklutin patent, is of similar construction, except that its fifth panel is not cut away (and that panel contains a slot which registers with the slot in the underlying panel of the wrapper. The match-book itself provides the means by which the wrapper is secured about the cigarette package. This is accomplished by simply threading the match-book cover through both slots, under both of the two overlapping panels, around the edge of the wrapper, then closing the match-book in the normal manner. The tight fit of the wrapper panels, lying between the match-book cover and the matches, provides a gripping action similar to a clothespin, particularly at a point immediately adjacent the wire staple which holds the match-book together.

13. The Hutchinson patent specifications and drawings do not disclose the construction of a cigarette package wrapper having two registering slots in overlapping panels. Hutchinson shows only one slot in one panel (10), together with a notch (5) in the overlapping panel. This notch is distinguished from a slot by the very terminology used by the inventor, and its sole purpose is to aid the consummation of the interlocking arrangement of the tongue and slit (patent, page 1, col. 2, lines 7–9). Nor does the patent teach any other means than the tongue and slit for securing the wrapper in place. The use of the match-book to secure the wrapper is not taught. The only function of the match-book in the combination, other than its traditional one of providing ignition, is to cover the projection (17) and prevent that projection from being torn. (See patent, page 1, column 2, lines 52–55). Neklutin's use of the match-book in co-operation with the two slots as a means of securing the wrapper about the cigarette package, is not the equivalent of plaintiff's tongue-and-slit arrangement.

14. There is some suggestion that plaintiff's claim to a patent broad enough to embrace devices like the accused, lies in the provision for adjustability of the wrapper to cigarette packages at different sizes. Plaintiff's patent is not a patent on adjustability in a cigarette package wrapper, and it could not be a patent on adjustability, for that is merely a result. The patent, however, discloses means for rendering the wrapper adjustable, these means being the notch (4) adjacent the tongue (2), in co-operation with the slit (7). (See patent, page 1, column 2, lines 15–29.) The patent does not teach any other means for rendering the wrapper adjustable, nor are the two slots of defendant's device deemed the equivalent of plaintiff's means for accomplishing adjustability.

15. Claim 5 of plaintiff's application and the modifications of Claim 3, both submitted after Neklutin's application was on file (see Finding No. 8) and after the Neklutin device was on the market (Record, p. 220), contain the first suggestion of a device having two slots; and these claims were rejected as being drawn to new matter. (File history, page 20.)

16. Claim 2 of the patent, which is the claim in suit, is open to the same objection. It does not claim the tongue and slit, but does claim the two slots. Claim 2 embraces devices like the accused, but the patent drawings, specifications and description do not disclose such a device or teach its construction. The claim sued on was drawn to new matter, not within the scope of plaintiff's patent application.

## Conclusions of Law

1. The court has jurisdiction of this cause.

2. This suit is timely.

3. A patent claim cannot claim anything beyond what is disclosed or taught by the inventor's drawings, description and specifications. National Carbon Co. v. Western Shade Cloth Co., 7 Cir., 93 F.2d 94, certiorari denied, 304 U.S. 570, 58 S.Ct. 1039, 82 L.Ed. 1535, rehearing denied, 304 U.S. 590, 58 S.Ct. 1054, 82 L.Ed. 1549; Baker Perkins Co., Inc., v. Thomas Roulston, Inc., 2 Cir., 62 F. 2d 509; Chicago & N. W. R. Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053; General Motors Corp. et al. v. Rubsam Corp. et al., 6 Cir., 65 F.2d 217, certiorari denied 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593. And a claim which includes something beyond what the inventor discloses or teaches is invalid. Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163; Good Roads Co., Inc., v. Charles Hvass & Co., Inc., 2 Cir., 70 F.2d 625.

4. Patent claims must be read in the light of the specifications.

5. Claim 2 of Hutchinson Patent No. 2,283,147 is invalid for want of disclosure.

6. The complaint should be dismissed at plaintiff's cost.