**AUREX CORPORATION, a corporation, and Walter H. Huth, Plaintiffs,**

**v.**

**BELTONE HEARING AID COMPANY, a corporation, Defendant.**

**No. 11707.**

United States Court of Appeals
Seventh Circuit.

Aug. 31, 1956.

Concurring Opinion Sept. 11, 1956.

Rehearing Denied Oct. 3, 1956.

Will Freeman, George E. Frost, Donald MacLeod, Chicago, Ill., for appellant.

Charles W. Rummler, Watson D. Harbaugh, Sherman R. Barnett, Chicago, Ill., for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant appeals from a judgment entered after a hearing by the district court, adjudging claims 1, 2, 15 and 16 of Cubert letters patent No. 2,304,339,

owned by plaintiffs, valid and infringed by defendant, decreeing that plaintiffs recover from defendant damages resulting from said infringement and costs and expenses, and that defendant be enjoined from further infringement.

Plaintiffs' counsel state that the invention covered by the patent relates to an improved mounting of a microphone in a wearable hearing aid. They say that Cubert's invention relates to undesirable noises produced by physical contact of clothing, fingers or other objects with the cord, casing, or some other portion of the hearing aid apparatus, and that it practically eliminates "so-called clothing noises for persons having hearing deficiencies". They construe the patent as showing "that the [rear of the] microphone is cemented to the center of a sheet of silk or other flexible material which is stretched flat across an opening in a frame so that the microphone has no tight or rigid connection with the frame through which molecularly conducted noises might pass". They also say that "Cubert, working counter-current to the usual practice, achieved the result which had long evaded the prior workers in the art", that he found "that the microphone should not be packed tightly in any insulating or cushioning material" and that he "informed the art" that the microphone "should not be held tightly but should be supported in a free floating manner so that it would be freely movable bodily within the hearing aid casing".

Defendant's counsel contend that before any of the Cubert activity here in question it was known that microphones should be floatingly mounted to eliminate extraneous sounds. They point to uncontradicted evidence that springs, sponge rubber rings, felt pads or rings and gum rubber type elements were used for this purpose. They say that the accused device does not infringe "because it uses unstressed foam rubber cushions which are the antithesis of the only thing shown in the Cubert patent—the stretched sheet diaphragm."

Cubert's patent application was filed April 19, 1940 and the patent was issued December 8, 1942. Prior to April 19, 1940 Cubert, then an engineer for plaintiff Aurex, designed a hearing aid, in which a microphone was weighted by a lead disk affixed on its rear side. Our inspection of the chassis and the casing of this construction shows that the combined lead disk and microphone required a circular opening in the chassis to receive the microphone. Cubert devised a construction to hold the microphone in this opening. He accomplished this by stretching a sheet of silk across the opening in the form of a diaphragm and cemented the sheet to the chassis at the edges of the opening. He then cemented the rear of the microphone to the sheet centered in relation to the opening. He also provided two foam rubber pads, bumpers, cushions or buttons, located on opposite sides on the front of and cemented to the microphone within its outer perimeter, and also a similar structure, round in shape, located and cemented to the sheet so as to place it between the sheet "where the latter was cemented to the back of the microphone and the back of the casing". These pads, by whatever name described, were admittedly conventional and were for the purpose of preventing shock.

These cushions are not mentioned in the written description of Cubert, although plaintiffs' witness Drumm testified in the district court that the round pad last above mentioned is shown in figure 4 of the drawings submitted with the application. However, there is no contention that it is in any way described or identified by any legend on the drawing.

Cubert's claims now in suit are:

1. In a portable microphone instrument to be worn on the person, as a part of a hearing aid apparatus, having an outside casing therefor, a microphone enclosed thereby and freely movable bodily therein and insulated against the communication thereto of vibrations set up

in the said outside casing by scratching or contact or friction thereon.

2. A structure as specified in claim 1, said microphone having a mounting or support by material having a low degree of vibration-communicating capacity.

15. In a portable microphone instrument to be worn on the person, as a part of a hearing aid apparatus, having an outside casing therefor, a microphone enclosed thereby and freely movable bodily therein and insulated against the communication thereto of vibrations set up in the said outside casing, from within or by scratching or contact or friction thereon, or by attachments thereto, said microphone having a casing and a suitably supported sheet of flexible material fastened to the casing of the microphone and mounted on the outside casing.

16. In an amplifier hearing aid: a casing of hard material, of a size and shape that can be easily and conveniently carried in the pocket of a coat or under the clothing; a microphone housed in said casing; and supporting means including sheet elements of flexible material carrying said microphone in a relatively movable position within said casing so as to prevent vibrations imparted to the outside casing by scratching or the like from reaching the microphone.

The patent office examiner rejected claims 1, and 2, *inter alia,* as fully met by Franzblau [1] or Williams,[2] whereupon Cubert requested reconsideration because these claims called for a microphone instrument that "has freedom of movement within the outside casing, and this is not true of either one of the references cited." [3]

In Cubert's said request for reconsideration, in speaking of the silk cloth, he stated that "It can only vibrate mechanically in the manner of a diaphragm, but that is what gives the microphone freedom of motion within the outside casing."

However, Cubert amended his specifications by adding the language which is quoted in italics in the footnote below,[4] wherein are set forth excerpts from the specifications as amended.

In his specifications, as amended, Cubert says that "a sheet of silk is stretched on the back of the chassis or frame" and through the opening in the frame the back of the microphone extends and is cemented to this "thin flexible sheet". It is specified that this sheet of silk is "stretched on the back of the chassis or frame".

It is undisputed that prior to the Cubert patent it was known that extra-

1. 2,182,865.

2. 1,311,430.

3. In plaintiffs' brief they urge that the silk, as a sheet of flexible material of a low degree of vibration communicating capacity, thus suspended the microphone with clearance all around for free movement bodily relative to the casing.

4. "The invention resides in the method of mounting the microphone proper on the said frame or chassis, and in the weighting of the microphone over and above what is commonly or ordinarily done, in order to prevent vibrations, set up in the outside casing, from traveling through the said frame or chassis to the microphone, thereby creating a disturbance in the receiving instrument worn in the ear, or back of the ear, if bone conduction is employed. * * *

"* * * to prevent such disturbance and annoyance, an ordinary crystal microphone having an annular aluminum body 5, of light material, may have a lead back 6 of the requisite weight, thereby to give the microphone enough inertia for the desired purpose, and in addition, lead is not a transmitter of molecular vibrations, or of sound vibrations. In addition, a sheet of silk 7 is stretched on the back of the chassis or frame 1, and the said lead back 6 is cemented to the said sheet of silk or other flexible material. In this way, of course, the microphone proper is insulated against any vibrations that might be set up in the outside casing and that might be communicated therefrom to the said chassis or frame 1, and from the latter to the casing of the microphone, and then to the crystal inside. * * *

*"It will be seen that the plate 1, which in effect forms a frame, has an opening 9 through which the back of the microphone 2 extends and is cemented to the thin flexible sheet 7, which is stretched flat on said frame."* (Italics supplied.)

neous sounds in microphones could be eliminated or diminished by a floating mounting.

In the accused device the microphone is located in the fore and aft direction by a pair of foam rubber cushions. The front cushion is in the form of a ring which, on one side thereof, is attached to the front edge of the microphone and, on the other side thereof, is attached to the inside of the front casing and around an open grill therein. The rear cushion is in the form of a smaller pad fastened only to the microphone. The district court found that the microphone is suspended by the foam rubber and without any stress upon the mounting member other than the slight weight of the microphone itself.

Defendant achieved its result by floating a microphone by the use of conventional cushions. It did not resort to a diaphragm. It did not use a thin sheet of silk or, in fact, a sheet of any material.

Cubert repeatedly refers to the diaphragm as a thin flexible sheet which is stretched. On the other hand, the district court found that in the accused device "a member of foam rubber is glued on one side to the inner surface of the hearing aid casing and on the other side to the microphone. The microphone is thus suspended by the foam rubber in an air space with clearance all the way around and *without any stress* upon the mounting member other than the slight weight of the microphone itself." (Emphasis supplied.) It further found that microphones "mounted upon unstressed foam rubber are freely movable bodily and isolated from the transmission thereto, through the mounting, of molecularly conducted sound vibrations" and also that the "microphone in the accused device is freely movable bodily and insulated against conduction thereto of molecular vibrations set up in the outside casing and receiver cord of the hearing aid, as by the rubbing of clothing thereon." Whatever may be the extent of the movability of the microphone of either the plaintiffs' or the accused device, the fact is that the micro-

phone in the accused device is permitted to move only because of the *conventional* use of cushions. Defendant's result is attained without using the diaphragm method patented by Cubert. The latter's invention is directed only to a stretched sheet diaphragm used to solve his problem. Cushions cannot vibrate diaphragmatically. Cushions are relatively thick (in contrast to a "thin flexible sheet, which is stretched flat"), and the thicker they are the more effective they become as non-conductors of molecularly conducted sound vibrations. Whereas Cubert devised the sheet diaphragm construction to locate a large weighted microphone in a chassis opening with small side, top, and bottom clearances, the accused device uses a small microphone with no added weight in a small chassis where side, top and bottom clearances are no problem, and without any chassis opening. Defendant simply glues the microphone to the cushion, which is itself fastened directly to the case. Cubert's patent, which teaches the use of a stretched diaphragm, is not infringed by the use of a conventional cushion, found by the district court to be unstressed except for the slight weight of the microphone itself. Permutit Co. v. Graver Corp., 284 U.S. 52, 57, 52 S.Ct. 53, 76 L.Ed. 163; Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co., 7 Cir., 243 F. 861, 870; Texas Co. v. Globe Oil & Refining Co., 7 Cir., 225 F. 2d 725, 733, 737.

Cubert placed his emphasis upon the use of a "stretched" support, and a "thin flexible sheet" which can "only vibrate mechanically in the manner of a diaphragm". Surely this cannot encompass a microphone "mounted upon unstressed foam rubber", or a microphone " * * * suspended by the foam rubber * * * without any stress upon the mounting member other than the slight weight of the microphone itself."

■ We conclude that defendant has not infringed the Cubert patent, as alleged in plaintiffs' complaint. Therefore, the judgment of the district court is reversed.

The district court did not adjudicate upon a counterclaim filed by defendant, praying *inter alia* for a judgment that the claims in suit are not infringed by any hearing aids manufactured by defendant. On that contention, *inter alia*, plaintiffs joined issue on the counterclaim by filing an answer thereto, but they offered no evidence with respect to any of defendant's models other than the accused device. Defendant introduced evidence in support of its counterclaim, showing that hearing aids known as defendant's exhibits 1 to 9 inclusive [5] and defendant's exhibit 12 [6] each involve a mounting of a microphone which in principle is the same as the mounting involved in the accused device. Furthermore, interrogatory No. 23 submitted by defendant read:

"Do Plaintiffs charge any of the following hearing aids manufactured by Plaintiff as infringements of Cubert Letters Patent No. 2,304,-339 and, if so, state which claims are alleged to be infringed.

a. TR
b. Lyric Transistor
c. Mono-Pac
d. Rhapsody
e. Concerto
f. Model H
g. Symphonette
h. Melody
i. Harmony
j. Lyric."

Plaintiffs answered that said hearing aids "all appear to embody the invention of Cubert Letters Patent No. 2,304,339 as defined in Claims 1, 2, 15 and 16 thereof". The hearing aids described in interrogatory No. 23 include defendant's exhibits 1 to 9 inclusive. It appears that defendant's exhibit 10 for identification [7] is the hearing aid referred to as Concerto in interrogatory No. 23. Inasmuch as defendant's attempts were abortive when it tried to establish by references to a chart (sometimes referred to as "defendant's exhibit 20" but not received in evidence) that the Concerto model involved a microphone mounting similar to that involved in the accused device, we find that on the record before us defendant is not entitled to any relief on its counterclaim as to that model.

Our views in reference to the accused device, (which is known in the record as plaintiffs' exhibit 9, and also as defendant's exhibit 8, and a part of which is reproduced in a drawing known as plaintiffs' exhibit 14) of course apply to the hearing aids actually introduced in evidence by defendant in support of its counterclaim.[8] They do not infringe the claims of Cubert in issue in this case. As to those hearing aids, it follows that the district court erred in not entering judgment of noninfringement on the counterclaim. Accordingly, this case is remanded to the district court for that purpose.

Reversed and remanded with instructions.

FINNEGAN, Circuit Judge (dissenting).

I would affirm the judgment of the District Court.

DUFFY, Chief Judge (concurring).

As I agree that infringement of the claims in suit was not established, I concur that the cause must be reversed and remanded. However, I think we should have discussed and decided the question of the validity of the claims in suit.

In Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, at page 330, 65 S.Ct. 1143, at page 1145, 89 L.

---

5. Defendant's exhibit 8 appears to be the same model as plaintiffs' exhibit 9.

6. Known as Allegro.

7. It was not received in evidence.

8. Defendant's exhibits 1 to 9 inclusive and defendant's exhibit 12.

Ed. 1644, the Court said: "There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. [Citing cases.] It has come to be recognized, however, that of the two questions, validity has the greater public importance [citing case], and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

In the case at bar the District Court upheld the validity of the claims in suit. That question was squarely raised on this appeal. I recognize there is some difference of opinion in the circuits as to the interpretation to be given to the admonition of the Supreme Court in the Sinclair case. The Sixth Circuit interprets it as a direction always to decide the issue of validity. Pennington Engineering Co. v. Spicer Mfg. Co., 165 F. 2d 59, 61.

In Powder Power Tool Corp. v. Powder Actuated Tool Co., 7 Cir., 230 F.2d 409, 415, this Court said: "In spite of our determination of non-infringement we follow the 'better practice' and turn now to the question of the validity of the claims."

There is, of course, some justification for other courts to hold that where there is non-infringement and the claims of the patent are not clearly invalid on their face, that it is, in effect, deciding a moot question to consider the question of validity. See Harries v. Air King Products Co., 2 Cir., 183 F.2d 158, 162; Patent Scaffolding Co. v. Up-Right, Inc., 9 Cir., 194 F.2d 457.

In the case at bar we have the situation where one judge, in dissenting, states that he would affirm the judgment of the District Court. That necessarily means that he thinks the claims in suit are valid. I likewise am of the opinion that the claims in suit are valid. Under such circumstances I think the question of validity should have been discussed and decided in the main opinion.