BENZ et al. v. CELESTE FUR DYEING & DRESSING CORPORATION et al.

No. 304, Docket 20228.

Circuit Court of Appeals, Second Circuit.

July 3, 1946.

Writ of Certiorari Denied Oct. 14, 1946.

See 67 S.Ct. 101.

---

Leonard Loewinthan, of New York City (Mock & Blum, of New York City, of counsel), for appellants.

Bergner & Bergner, of New York City (Daniel L. Morris, Harold L. Stults and Alexander Mencher, all of New York City, of counsel), for appellees.

Pursuant to the opinion of this court on a former appeal, 136 F.2d 845, this case was again tried before a judge and jury. Defendants moved for a directed verdict at the close of plaintiffs' proofs. The trial judge, reserving decision on that motion, left to the jury all questions relating to validity and infringement, instructing the jury to consider that the patent did not make the use of cresol mandatory. The jury returned a verdict for the plaintiffs, finding that the claims in suit were valid and that defendants had infringed. Defendants then moved to set aside the verdict and for entry of judgment in accordance with their motion for a directed verdict, or, in the alternative, for a new trial. The judge, after hearing evidence on issues raised by a counterclaim filed by defendants, dismissed that counterclaim. The judge then set aside the verdict, granted the motion for a directed verdict and entered judgment for defendants. His opinion is reported in, D.C., 57 F.Supp. 895.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

We cannot agree with plaintiffs' contention that the trial judge's decision involved a determination of issues of fact which either were or should have been left to the jury. He had instructed the jury to interpret the claims in suit as not requiring the use of cresol. In subsequently reaching his decision to enter judgment for the defendants despite the verdict, he dealt solely with questions of "law," there being no issues of fact bearing thereon which should have been submitted to the jury.

We agree with the judge that there was no evidence that Calva had disclosed to Nelson or Laskin the information on which Laskin's successful public use, in October 1937, was based. Nor was it shown that Nelson or Laskin & Co. learned the use, minus cresol, through the Calva-Nelson interference proceedings.

Plaintiffs point to an affidavit by Nelson, dated December 13, 1940, filed in the Nelson-Calva interference proceedings, which was put in evidence by defendants at the second trial of the case at bar. In that affidavit, Nelson said that he had executed a concession of priority of invention to Calva because he, Nelson, had become convinced that he was "not the first inventor," and that "Calva was prior to" him in "making such invention."[1] But in that affidavit Nelson did not say that he had learned of the invention from Calva, and certainly not that Calva had told Nelson that cresol need not be employed.[2]

As the judge said, Calva unequivocally testified that, before February 24, 1941, he had not experimented with acidulated formaldehyde in the absence of cresol. Subsequently, Calva modified this testimony, stating that on March 22 and 23, 1937, he conducted "the first experiment in which cresol was completely ruled out," and that, in that experiment, he had omitted cresol but had used cresol-sulphonic acid. We agree with the judge that this added testimony was a fishy afterthought;[3] however, for purposes of this appeal, we treat it as true. Since Calva did not show that this experiment was successful, we find it difficult to take seriously plaintiffs' argument that it serves to negative the strong inference that Calva learned from Laskin's public use that cresol could be eliminated.

[1] Before the date of this affidavit and before his concession of priority, Nelson had assigned his application to a subsidiary of Laskin & Co.; because the affidavit and concession were made after assignment of this application, the Patent Office would not consider the concession. It is to be noted that Nelson was given a non-exclusive license under the Calva patent, which license included the right to confer its benefits on his employer, and that plaintiffs have not brought suit against Laskin as an infringer of the claims here in suit.

[2] Nelson's application was filed on November 9, 1936. At that time, Calva had never tried the process without using cresol.

[3] There was no corroboration of the experiment.

But we assume that that experiment did negative that inference. Still, nothing in Calva's testimony remotely indicates that knowledge of this experiment had been communicated to Nelson or Laskin before Laskin's public use in October 1937.

Plaintiffs advance the following contention: (a) Calva's original application, filed in 1936, contained broad claims which did not make mandatory the use of cresol; (b) these claims constituted a disclosure of the lack of necessity of using cresol; (c) it is immaterial, for purposes of disclosure, that these claims, because they read on the prior art, were disallowed by the Patent Office; (d) accordingly, the present broad claims in suit, which omit the use of cresol, are valid because they relate back to 1936, when the original application was filed, although they were added by amendment after Laskin's public use.

Here the following data are pertinent: (a) When Calva filed the original application on October 19, 1936, he had never used formaldehyde and acid without also using cresol. It is clear that he did not, at that time, have in mind that cresol could be omitted; this appears from his testimony (which is discussed in detail in the trial judge's opinion) and from the specifications which stated that cresol was "the most important" of the "reacting substances." (b) In December, 1937, after Laskin's public use, Calva amended by adding 22 new claims, none of which omitted cresol; true, at the same time he amended the specifications by changing "the most important" to "useful in my invention," but he did not then (or later) alter the immediately succeeding sentence in which he said that the presence of hydrochloric

acid "is also necessary." [4] (c) Calva's unsuccessful experiment in March, 1937, cannot be considered the genesis of the claims in suit. [5] (d) In May, 1938, at the suggestion of the Patent Office (in connection with an interference with one Kritchevsky), Calva amended by inserting what is now Claim 10. (e) The other claims in suit were added by amendment on February 24, 1941.

On the basis of the foregoing, and of related facts reported in the trial judge's opinion, we agree with the judge that in the original application there was nothing, either in the specifications or the claims properly construed, which disclosed that the use of cresol was not mandatory.

■■ This question, then, arises: When nothing in an original application reveals an asserted invention, is an amendment valid which claims that invention, if that amendment is filed within two years but only after an intervening successful public use by an independent third person? We think not. Because of Laskin's use in October 1937, the amendment in 1938 cannot validly relate back; and this is true a fortiori of the claims subsequently added by amendment in 1941. Calva has not shown that the amendments involved "something that might be fully deduced from the original application"; he sought, by amendments, to "appropriate that which" had "meantime gone into public use." [6] For that reason, the claims in suit are invalid. [7]

We think it unnecessary to discuss other questions raised by plaintiffs, or the trial judge's order dismissing defendants' counterclaim.

Affirmed.

---

[4] On this appeal, the parties agreed that we should disregard the stipulation which is referred to in the opinion of the trial judge.

[5] It should be observed that his first amendments after this experiment were made in December, 1937; although, as above noted, he then added 22 claims, none of them excluded cresol, and he then said not only that cresol is "useful," but, after referring to cresol, that hydrochloric acid is "also necessary."

[6] See our former opinion, 136 F.2d 845, 847, and cases there cited in note 3; Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 573, 59 S.Ct. 8, 83 L. Ed. 34; see discussion in Engineering Development Laboratories v. Radio Corporation of America, 2 Cir., 153 F.2d 523, 526.

On the facts here, Katz v. Horni Signal Corp., 2 Cir., 145 F.2d 961, is not in point.

[7] Calva made no new statutory oath until 1943.