## FUL–VUE SALES CO. v. AMERICAN OPTICAL CO.

United States District Court
S. D. New York.
Jan. 29, 1953.

See also, D.C., 11 F.R.D. 185.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City (Daniel V. Mahoney, New York City, of counsel), for plaintiff.

Fish, Richardson & Neave, New York City (Alexander C. Neave, New York City, Hector M. Holmes and William W. Rymer, Boston, Mass., of counsel), for defendant.

CLANCY, District Judge.

### Findings of Fact.

1. Plaintiff, a partnership, is the owner of the patent in suit No. 2,041,638 granted to it May 19, 1936, as assignee of Ernest E. Emons. The patent is for a spectacle frame or mounting in which the temples are secured to end pieces arranged above the normal field of side vision, the lenses are connected by a bridge member which is substantially in line with the temple connections, and nose guards are arranged on the nasal side of each lens, the nose guards being rearwardly offset and arranged to bear on the sides of the nose of the wearer below the center line of vision.

2. The invention of temple supports above the center line of vision had been patented by Emons in United States Patent No. 1,685,192, granted September 25, 1928, and by John Anthony Smith in United States Patent No. 1,739,049, granted December 10, 1929. The use of offset nose guards, arranged to bear on the nose below the center line of vision, was also known prior to the invention of the patent in suit; Borsch 272,521–1883 and Wall 1,360,603–1920. There is, however, no showing of the combination prior to Emons' filing date, June 14, 1929.

3. Various agreements were made by plaintiff and defendant resulting in an ex-

clusive license for the latter to make use of the patent in suit. These agreements were terminated by a consent decree filed September 17, 1948 in a suit brought against both and others under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note.

4. Since the termination of the agreements defendant has continued to use the combination of the patent in suit without license and admits infringement if the patent is valid.

5. The original application of 1929 in no way discloses the combination which became the subject matter of the patent that issued. This application was exclusively concerned with a certain split rim construction in a Ful Vue and makes no mention of nose guards in its specifications. The nose guard feature appeared in the drawing, unnumbered.

6. By the amendment of September 4, 1930 the Patent Office was first apprised of the nature of the patent in suit and the relation of nose guards and temples.

7. Commencing in June, 1928 G. J. Kirby, a manufacturer of optical goods, made and sold in the regular course of business to Haussman & Co., an optometrist in Philadelphia, Ful Vue low offset nose guard frames embodying the alleged invention of the claims of the Emons patent in suit. Haussman & Co. sold these frames in the regular course of business to the public.

8. Whether or not these sales constituted a friendly or adverse use they did constitute a public use and sale occurring more than two years prior to the date of the September, 1930 amendment.

9. In February, 1934, the Patent Office declared an interference between a United States application based upon a British patent which had been obtained by one McLeod, and the Emons application. The counts, as eventually framed, are claims 1 and 2 of the Emons patent as issued and were drafted by Styll, defendant's patent attorney.

10. On September 11, 1934 plaintiff and defendant made an agreement that the interference should be prosecuted to final adjudication on priority; if McLeod should prevail, his application would be assigned to plaintiff; and plaintiff granted the defendant an exclusive license under whichever patent issued as a result of the interference. The Patent Office awarded priority to Emons and Emons' patent issued on May 19, 1936.

### Conclusions of Law.

1. Since drawings alone cannot constitute presentation to the Patent Office, the effective filing date of Emons' patent for the combination of Ful Vue and nose guards is September 4, 1930, when, for the first time, the Emons application by amendment described this combination.

2. The Emons patent is invalidated because frames embodying the invention of the Emons claims were made and sold by Kirby and in turn made and sold in regular course of business by Haussman & Co., commencing in June, 1928, more than two years prior to September 3, 1930.

3. Public use or sale before the two-year period invalidates whether or not it be by consent of the inventor and it makes no difference that the Kirby and Haussman sales were not adverse.

4. Defendant is not estopped to raise the defense of two years' public use or sale because no such issue was raised in the interference nor is defendant estopped by reason of the fact that its agent, Styll, reformed counts 1 and 2.

That a drawing cannot constitute description of an invention so that a patent may issue thereon has been established by Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163. On the other hand it has been held in Jockmus v. Leviton, 2 Cir., 28 F.2d 812, that figures can of themselves be an adequate anticipation of mechanical inventions. The question of whether or not the drawing alone can be the basis of disclosure when the issue is the effective date of a patent, has been foreclosed by Hazeltine Research v. General Motors Corp., 6 Cir., 170 F.2d 6, certiorari denied 336 U.S. 938, 69 S.Ct. 750, 93 L. Ed. 1097. The latter case held as a matter of law that a drawing alone will not suffice for this purpose and as a matter of fact that the specifications did not disclose the invention. In this case the only possible

disclosure of the combination lies in the drawing in the original application and this drawing cannot provide the disclosure. The first amendment in which the specification describes the combination came more than two years after its public use and sale. This amendment must be considered as having introduced new matter; namely, the combination of Ful Vue and nose guards and the patent that issued must take for its effective date the date of that amendment rather than that of the original application.

Since no relationship survived the termination of all agreements between plaintiff and defendant by the consent judgment entered in this Court on September 17, 1948, no estoppel can be asserted to prevent defendant from raising a defense of two years' prior use. The activities of defendant's agent, Styll, in the Patent Office, cannot now provide a basis for estoppel, not only because public rights are involved but also because neither a relationship nor a representation such as is involved in assignor estoppel is here present.