Freda **OELBAUM**, Plaintiff,

v.

The **LOVABLE COMPANY**, Defendant.

United States District Court
S. D. New York.
Dec. 7, 1962.

Poletti, Freidin, Prashker & Harnett, New York City, for plaintiff, Martin C. Seham, New York City, of counsel.

Levisohn, Niner & Levisohn, New York City, for defendant, Edwin Levisohn, Henry R. Lerner, New York City, of counsel.

LEVET, District Judge.

This is an action brought by the plaintiff-patentee Freda Oelbaum for in-

fringement of United States Patent No. 2,817,089 issued to her on December 24, 1957 (hereinafter "Oelbaum patent"). The defendant is The Lovable Company (hereinafter "Lovable"), a manufacturer of brassieres and other ladies' undergarments. Defendant denies infringement and validity of the Oelbaum patent and has counterclaimed for a declaratory judgment to this effect. By stipulation of counsel, only claim 4 of the Oelbaum patent is in issue.

After hearing the testimony of the parties, examining the exhibits, the pleadings, the briefs and proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. THE OELBAUM PATENT

1. On December 24, 1957, United States Patent No. 2,817,089 (Pl. Ex. 2) was issued to plaintiff Freda Oelbaum on an application filed January 9, 1956, and since the date of issue plaintiff has been and still is the owner of Patent No. 2,817,089. (5, 87) [1]

2. Plaintiff has given written notice on December 30, 1957 to defendant charging infringement of the Oelbaum patent (Def. Ex. Z) and defendant has received said notice. (Stipulation of counsel, 87)

3. Claim 4 of the Oelbaum patent No. 2,817,089 is the only claim in issue.[2] (88)

4. Claim 4 of the Oelbaum patent relates to a horizontal or lateral adjustment feature for a woman's brassiere in which the shoulder strap may be detachably secured in a series of positions accommodating the wishes of its wearer. This is accomplished by means of a series of laterally displaced hooks, called "fastening elements," located entirely below the upper marginal edge of the inside sur-

face of the breast cup portion of the brassiere. Loops on the shoulder straps enable the wearer to engage the hooks on the cup portion at the desired position. (Pl. Ex. 2)

5. The invention of claim 4 of the Oelbaum patent, as explained by the plaintiff's expert, is the placing of the fastening elements or hooks below the upper edge. (530–31, 542, 544)

## II. THE OELBAUM APPLICATION

### A. Claim 4 and Its Predecessors

6. Claim 4 of the Oelbaum patent reads as follows:

"4. In a ladies' garment having two interconnected bust supporting cup portions, a back portion connected with said cup portions, whereby the garment is adapted to extend around the wearer, and two shoulder straps, each of said shoulder straps having an end adapted to be connected to said back portion and another front end, a fastening device for separately connecting a section of each strap adjacent its front end to a separate cup portion, said fastening device comprising at least one fastening element carried by said strap section, and a plurality of fastening elements which are separated one from the other and which are mounted side by side upon an inner surface of the cup portion below the upper edge thereof, said plurality of fastening elements being located upon an inner surface of said cup portion entirely below said upper edge and having portions which are selectively engaged by said one fastening element and which are located in their entirety upon an inner surface of said cup portion below said upper edge, whereby pulling forces exerted by said one fastening element of said shoulder straps upon said fastening element of said cup portions are

---

1. All references are to the transcript of the trial unless otherwise noted.

2. The Oelbaum patent issued with four claims. Claims 1 to 3, which are not here in issue, relate to a vertical adjustment feature for brassieres.

distributed throughout the surfaces of the cup portions without creasing or folding the cup portions and whereby directions of said pulling forces may be effectively varied without such creasing or folding." (Pl. Ex. 2)

7. The Oelbaum application as originally filed on January 9, 1956 contained ten claims. (Def. Ex. A, pp. 8–10; 216) There is no reference in any of these claims to the fastening elements being located at the "upper edge" or "below the upper edge" or "entirely below the upper edge" of the breast cup. (148, 217) Nor is there any reference to the words "creases" or "folds." (149, 217)

8. On May 29, 1956 Oelbaum filed a "Petition to Make Special" seeking the Patent Office to preemptorily treat her application in view of the alleged infringement by the defendant. (Def. Ex. A, pp. 13–17; 218) In support of this petition and forming a part thereof, the plaintiff filed an affidavit dated May 18, 1956 in which she stated that she purchased and examined the accused garment. (Def. Ex. A, pp. 14–15) The Petition to Make Special was granted on June 12, 1956. (Def. Ex. A, p. 18; 219–20)

9. Plaintiff purchased and examined the defendant's garment sometime in April or May, 1956. (56–61; Def. Ex. A, pp. 14–15)

10. Giving the Oelbaum patent preemptory consideration, the Patent Examiner on June 21, 1956 rejected all ten claims as originally filed. (Def. Ex. A, pp. 19–20)

11. On July 30, 1956, the plaintiff amended her application by cancelling all ten originally filed claims and introducing new claims 11 through 14. (Def. Ex. A, pp. 21–25; 150) Claim 14 introduces for the first time into the Oelbaum application a reference to the location of the fastening elements in relation to the upper edge of the breast cup by the language: " * * * a plurality of fastening elements mounted side by side upon an inner surface of the cup portion adjacent to the upper edge thereof and attached to the inner surface at a distance from said upper edge * *." (Def. Ex. A, p. 23; 151)

12. The Examiner rejected claim 14 on August 20, 1956 as unpatentable over the disclosure in the U.S. patent to Davis, No. 2,714,211. (Def. Ex. A, p. 27)

13. On October 10, 1956, claim 14 was amended by, inter alia, defining the fastening elements as " * * * a plurality of separate fastening elements mounted side by side at a distance from each other upon * * * " and " * * * said fastening elements being located below and at a distance from said upper edge * * *." (135–136; Def. Ex. A, pp. 28–31)

14. The Examiner on November 21, 1956 rejected amended claim 14 as unpatentable over the reference to Davis, U.S. No. 2,714,211. (Def. Ex. A, pp. 32–33)

15. On December 14, 1956, plaintiff sought to further amend claim 14 by introducing the phrases "below the upper edge," "being located entirely below said upper edge" and "which are located in their entirety below said upper edge" to describe the position of the fastening elements. Also, there was introduced for the first time the clause "whereby pulling forces exerted by the straps upon the cup portions are distributed throughout the surfaces of the cup portions without creasing or folding the cup portions and whereby directions of said pulling forces may be effectively varied without such creasing or folding." The Examiner, as permitted under Patent Office Rules, refused to admit the proposed amendment. (151–52; Def. Ex. A, pp. 34–37)

16. The plaintiff on March 8, 1957 took an appeal from the final rejection of amended claim 14. (259; Def. Ex. A, pp. 38–39) While the appeal to the Patent Office Board of Appeals was pending and prior to any action thereon, the plaintiff proposed to enter a new claim 15 into the case. (263, 265; Def. Ex. A, pp. 56–60) The case was then remanded to the Examiner for consideration in light of the new claim 15. (263)

17. Claim 15 was allowed by the Examiner and issued in the patent as claim 4. (265, 270, 275)

*B. The Specification*

18. The specification of the Oelbaum patent filed on January 9, 1956 as part of the patent application was never amended. (513; Def. Ex. A, pp. 1–7)

19. There is no reference in the specification to the fastening elements as being below or entirely below the upper edge. (146, 214, 305) The only references to the location of the fastening elements in the specification are at column 2, lines 32–34 and column 2, lines 57–62 of Pl. Ex. 2. Column 2, lines 32–34 states: "The pockets 9 and 10 have upper edges carrying on the inside hooks 17 securely connected to the undergarment." Column 2, lines 57–59 states: " * * * a row of hooks 27 positioned and secured in the top of the cup portions 20 of the undergarment." Column 2, lines 60–62 states: " * * * series of hooks 27 secured to the top of the body or cup portions 20 of the undergarment * * *." None of these references supports the location of the fastening elements as being "below the upper edge" or "entirely below said upper edge" or "in their entirety * * * below the upper edge." (142, 213–14, 310–13)

20. There is no reference in the specification as to the formation or elimination of "creases" and "folds" in brassieres. (146, 215) There is no support in the specification for the material contained in the "whereby" clause of claim 4 relating to the elimination of creases and folds. (145–46, 237) Nor was it one of the stated objects of the Oelbaum patent to avoid creases and folds. (531, 533)

21. No supplementary oath was ever filed by the plaintiff in the patent application. (Def. Ex. A)

*C. The Drawings*

22. The drawings filed on January 9, 1956 as part of the patent application were never amended during the prosecution of the case in the Patent Office. (169)

23. The drawings do not clearly point out the exact location of the fastening elements in relation to the upper edge of the breast cup. (239, 307, 331; Pl. Ex. 2) Figure 1 is blurred and unclear. Figure 2 is unclear on this feature because of the perspective from which it is drawn. The same problem arises as to Figure 3. (Pl. Ex. 2)

24. The drawings of the Oelbaum application as filed disclose only *two* hooks on the upper portion of the breast cups of the brassiere. (Figs. 1–3 of Pl. Ex. 2) Plaintiff presently claims as her invention the placing of a series of at least three hooks along the upper edge of the breast cups. (Pl. Exs. 5 and 9)

## III. THE PRIOR ART

25. The plaintiff has failed to sustain her burden of proving by clear and convincing evidence that she is entitled to a date of invention antedating January 9, 1956, the date on which her application was filed in the Patent Office.

The evidence offered was the trial testimony of the plaintiff herself and a Dr. George Urbach and the deposition testimony of Mrs. Sylvia Rekoon, a friend of the plaintiff. Plaintiff testified that she conceived the idea of her invention in 1939 or 1940. (6–8) Her patent application was not filed until January 9, 1956, some 16 or 17 years later. (Deft. Ex. A) In spite of the intervening years, she testified with explicit details as to the location of the hooks on the inside of the breast cup completely below the upper edge. (8) She testified that she showed the brassieres to her mother, her husband, Dr. Urbach and Mrs. Rekoon. (9–13) Plaintiff first approached a patent attorney in December, 1953. (14; Pl. Ex. 3) The patent application was filed on January 9, 1956. (14; Pl. Ex. 4)

No documentary evidence was offered to substantiate the events in the period of 1939 to 1953. The only documentary evidence proffered is an undated two-page description of the invention which the plaintiff testified she gave to her patent attorney in December, 1953. (14,

34; Pl. Ex. 3) Nowhere in this document is there any mention of the location of the hooks below the upper edge of the breast cups.

Dr. Urbach testified that prior to December 1943 he visited the plaintiff at home and examined her breasts. Despite the intervening years and with no documentary records to assist him (183, 188), the doctor testified that the bra Mrs. Oelbaum was wearing on this occasion had three to six hooks located on the innermost surface of the cup concealed from the outside. (178–79) The difference, the doctor testified, between the drawings of the patent and the bra he saw in 1943 was that the hooks on the breast cup were more numerous and more widely spread apart on the bra than they are on the drawings.

Mrs. Rekoon, a friend of the plaintiff, testified that sometime in 1953 she wore a bra modified by the plaintiff to enhance her decolletage. (Pl. Ex. 1, p. 6) Again, despite the intervening years and with no documentary evidence, she testified that the bra had three or more hooks on the cup portion located below the upper edge of the bra and not visible from the front. (Id. at 8–9, 19)

This falls short of establishing by clear and convincing evidence to a certainty that the plaintiff is entitled to a pre-filing date of invention.

26. Defendant relies upon the following patents as prior art:

U.S. Patent No. 2,782,418 issued to A. Garson on February 26, 1957 on an application filed March 30, 1955 (hereinafter the "Garson patent") (Pl. Ex. 7);

U.S. Patent No. 2,714,211 issued to G. Davis on August 2, 1955 on an application filed in Great Britain on October 26, 1951 and in this country on October 14, 1952 (hereinafter the "U.S. Davis patent") (Def. Ex. D);

British Patent No. 702,969, published January 27, 1954 [3] (hereinafter the "British patent") (Def. Ex. E);

U.S. Patent No. 2,023,612 issued to M. Park on December 10, 1935 (hereinafter the "Park patent") (Def. Ex. G);

U.S. Patent No. 2,400,499 issued to E. Gerace on May 21, 1946 (hereinafter the "Gerace patent") (Def. Ex. I);

All of the above were cited by the Patent Office except the Garson patent.

27. The Garson patent achieves the feature of lateral adjustability in a woman's brassiere by the use of a strip of material sewn below the upper edge of the cup portion having apertures therein which accommodate a "T-shaped" member carried by the shoulder strap.

The Davis patent provides a similar feature by means of an edging consisting of interwoven loops placed along the upper and side edges of each cup portion and the upper edge of each back portion of the brassiere. A buckle attached to the shoulder strap may then be detachably inserted through the loops of the edging at the position desired by the wearer.

The Park patent relates to a brassiere with detachable shoulder straps. No feature of lateral adjustability is shown.

The Gerace patent discloses a brassiere in which the adjustability feature is accomplished by the use of bifurcated shoulder straps which cooperate with hooks on bifurcated panels of the cup portion of the brassiere.

## IV. DEFENDANT'S GARMENTS

28. Defendant's garments (Pl. Ex. 6), which are alleged to infringe, are produced under the Garson patent issued to Arthur Garson, President of defendant. (Pl. Ex. 7; 458)

29. The Garson patent and the garments produced thereunder achieve the feature of lateral adjustability in a woman's brassiere by the use of a strip of material sewn below the upper edge of the cup portion having apertures therein which accommodate a "T-shaped" member carried by the shoulder strap. (Pl. Exs. 6 and 7)

3. The disclosure of the British patent is identical to that of the U.S. Davis patent (228).

30. Garments embodying the features of the Garson patent were first placed in public use and on sale in January, 1955 at the Spring showing of the defendant's products. (468–72; Deft. Exs. S and T) At this showing, the garments were offered for public sale and, in fact, on January 10, 1955, one was sold. (472–73; Deft. Ex. U) Thereafter, on February 9, 1955, additional sales were made. (474–75; Deft. Ex. V) Garments embodying these features were advertised to the public in March, 1955. (Deft. Exs. W and X) Defendant can establish no sale prior to January 10, 1955. (484)

31. There is no difference between the garment defined in claim 4 of the Oelbaum patent and that produced under the Garson patent. (110–16) The fastening elements of claim 4 certainly embrace the apertured strip of the Garson patent. (157; Pl. Exs. 2 and 7) As disclosed in the drawings, the only difference is that in Oelbaum the lateral adjustment is achieved by a series of laterally displaced hooks sewn on the cup portion while in the defendant's garment the same function is performed by an apertured strip of material. (Comparison of Pl. Exs. 5 and 9 with Pl. Ex. 6)

## DISCUSSION

### A. Lack of Invention

■ The burden of proof which a patentee must sustain in order to establish a date of invention prior to the filing date of the application is an extremely heavy one. As the court stated in United Shoe Mach. Corp. v. Brooklyn Wood Heel Corp., 2 Cir., 1935, 77 F.2d 263, 264:

> "When an inventor's date is to be carried back beyond his application, courts regard the effort with great jealousy, and must be persuaded with a certainty which is seldom demanded elsewhere; quite as absolute as in a criminal case, in practice perhaps even more so."

See also Helene Curtis Industries Inc. v. Sales Affiliates, Inc., 2 Cir., 233 F.2d

148, 156, cert. denied 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956), affirming 121 F.Supp. 490 (D.C.S.D.N.Y.1954); Johnson & Johnson v. C. B. Stenvall, Inc., D.C.S.D.N.Y.1961, 193 F.Supp. 128, 132.

■ It is this burden which the plaintiff-patentee Oelbaum has failed to carry. (See Finding of Fact No. 25) Because of this failure, plaintiff is bound by her filing date of January 9, 1956.

■■ Since neither the Garson nor the U.S. Davis patents issued more than one year prior to the filing date of the Oelbaum application, 35 U.S.C. § 102, they can be considered as anticipatory patents only if their filing dates precede Oelbaum's date of invention. The application date of the Davis patent is October 26, 1951 and that of Garson, March 30, 1955. (Finding of Fact No. 26) Since both these pre-date the Oelbaum invention date of January 9, 1956, they may be considered anticipatory references.[4] See Syracuse v. H. Daust Manuf. Co., 8 Cir., 1960, 280 F.2d 377; United Parts Manuf. Co. v. Lee Motor Prod., Inc., 6 Cir., 1959, 266 F.2d 20.

■ There is no difference between the garment described in claim 4 and that disclosed in the Garson patent. Certainly, the "fastening elements" of claim 4 embrace the use of the apertured strip of material used by Garson. (See Finding of Fact No. 31) Since the Garson application was filed before the invention date of Oelbaum, it directly anticipates claim 4. 35 U.S.C. § 102(e); Alexander Milburn Co. v. Davis-Bournonville Co., 1926, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651.

Even assuming that there is not a full anticipation of the Oelbaum patent by Garson, the substitution by Oelbaum of hooks for the apertured strip of Garson would have been obvious to a person having ordinary skill in the art to which this subject matter pertains. 35 U.S.C. § 103.

Even omitting consideration of the Garson patent, it would hardly seem to

4. Neither in the pleadings nor at the trial did either party raise the issue of priority of invention between the Oelbaum and Garson patents.

rise to the level of invention to substitute ordinary hooks for the loop edging of Davis. Concededly, the hooks would eliminate the need for the loop edging of Davis to entirely encircle the garment, but this would be no more than the ordinary neatness expected of the artisan in this field.

The statutory standard of invention embodied in 35 U.S.C. § 103 places upon the court the duty to "surmise what was the range of ingenuity of a person 'having ordinary skill' in an 'art' with which [the court is] totally unfamiliar." Reiner v. I. Leon Co., 2 Cir., 1960, 285 F.2d 501, 503–504, cert. denied 1961, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388. There are certain signposts or indicia of patentability which assist the court to determine invention, so that the statutory standard does not amount to a substitute by the court of its own "ignorance for the acquaintance with the subject of those who [are] familiar with it." Id. 285 F.2d at 504.

These signposts are totally absent here. There is no evidence that the Oelbaum device fulfilled a long-felt need; nor that all recognize it as the solution immediately upon its disclosure; or that others had attempted and failed to find the solution.

There is here neither a significant advance over the prior art (Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Atlantic Plastics Co. v. Henry Hanger & Display Fix. Corp., 2 Cir., 1962, 305 F.2d 100; Comptone Co. v. Opti-Ray, Inc., D.C.E.D.N.Y.1962, 211 F.Supp. 326); nor any manifestation of an inventive genius (Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., supra); nor the cunning product of an expenditure of toil and sweat (Reiner v. I. Leon Co., supra; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, cert. denied 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1955)). Nothing is here which amounts to more than the routine neatness of the ordinary artisan, skilled in her art.

The plaintiff places great reliance upon the presumption which attaches to the granting of a patent. 35 U.S.C. § 282; Radio Corp. of America v. Radio Engineering Lab., Inc., 1934, 293 U.S. 1, 7–8, 55 S.Ct. 928, 79 L.Ed. 163. Here, that presumption is weakened by the failure of the Patent Office to cite the most pertinent prior art reference, the Garson patent. (Finding of Fact No. 26) There was clearly an opportunity to do so when the case was remanded to the Examiner in August, 1957. (Def. Ex. A, p. 61) The Garson patent had issued on February 26, 1957. (Pl. Ex. 7)

Had the Garson patent been cited, it certainly would have been possible for the plaintiff to attempt to prove an invention date prior to the Garson application date, as is permitted by Rule 131, Rules of Practice of the United States Patent Office, 37 C.F.R. § 1.131 (1959). This was not done by the plaintiff when the Examiner cited the Davis patent, which was susceptible of being overcome by the establishment of an earlier invention date under Rule 131. (243; Def. Ex. A) Even if this had been done, it would not be binding on this court. The burden of proof required in an infringement action to establish a pre-filing invention date is far more severe than that under Rule 131 in the ex parte proceedings before the Examiner. It is this burden which the plaintiff has failed to meet.

Once, as here, the presumption is overcome, the patent no longer holds a preferred position. The presumption cannot prop up a patent that is moribund for want of invention.

Claim 4 is, therefore, invalid because the subject matter of the claim would have been obvious to one skilled in the art at the time of the alleged invention. 35 U.S.C. § 103.

*B. Intervening Public Use*

Certainly, an applicant may amend or add claims during the pendency

of his application in the Patent Office without affecting their validity. The important caveat is that the alterations and additions must be supported by a reasonable interpretation of the original disclosure. Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., D.C.S.D.N.Y. 1954, 121 F.Supp. 490, 505, aff'd 2 Cir., 233 F.2d 148, cert. denied 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956). Amendments which merely clarify and explain what is inherent and implicit in the original application are proper. Marconi Wireless Telegraph Co. v. United States, 1943, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731. Amendments "which go no further than to make express what would have been regarded as an equivalent of the original, or to incorporate into one claim what was to be gathered from a perusal of all, if read together" do not render the claims invalid. Engineering Development Lab. v. Radio Corp. of America, 2 Cir., 1946, 153 F.2d 523, 526.

■ Nor is the validity of the claims defeated by the fact that the claim is sought only after an intervening public use, so long as there was in the original application a full disclosure of the invention finally claimed. Coats Loaders & Stackers, Inc. v. Henderson, 6 Cir., 1956, 233 F.2d 915, 924; Trico Products Corp. v. Delman Co., D.C.S.D.Iowa 1961, 199 F.Supp. 231.

In this case nothing in the original specification or claims as filed on January 9, 1956 disclosed that the invention was the placing of the hooks "entirely below the upper edge" of the breast cups. (Findings of Fact Nos. 7 and 19) The omission from the specification and claims was not supplied by the drawings, which were at best ambiguous on the point.

■ Even assuming that the drawings did disclose the critical feature of claim 4, they alone, absent a description in the specification or claims, do not provide a sufficient basis for disclosure. Hazeltine Research, Inc. v. General Motors Corp., 6 Cir., 1948, 170 F.2d 6,

rehearing denied, 6 Cir., 171 F.2d 680, 681, cert. denied 336 U.S. 938, 69 S.Ct. 750, 93 L.Ed. 1097 (1949); Ful-Vue Sales Co. v. American Optical Co., D.C. S.D.N.Y.1953, 112 F.Supp. 35. Cf. Permutit Co. v. Graver Corp., 284 U.S. 52, 52 S.Ct. 53, 76 L.Ed. 163 (1931); Dugan v. Lear, Inc., 2 Cir., 1946, 156 F.2d 29; Shu-Conditioner, Inc. v. Bixby Box Toe Co., D.C.D.Mass.1960, 185 F.Supp. 662, aff'd 1 Cir., 1961, 294 F.2d 819.

The defendant's garment was first placed in public use and sold to the public on January 10, 1955. It was only after the defendant's garment entered public use and was placed on public sale and the plaintiff had, in fact, purchased and examined the garment in April or May, 1956, that the critical features of the invention entered the application by means of an amendment filed July 30, 1956. Prior to the amendment of July 30, 1956, nothing in the specification or claims disclosed the criticalness of placing the hooks below the upper edge of the breast cups.

■ An applicant cannot expand his application by amendment so as to embrace an invention not described in the application as filed when adverse rights of the public have intervened. Schriber-Schroth Co. v. Cleveland Trust Co., 305 U.S. 47, 59 S.Ct. 8, 83 L.Ed. 34 (1938); Railway Co. v. Sayles, 97 U.S. 554, 24 L.Ed. 1053 (1878); Hazeltine Research, Inc. v. General Motors Corp., supra; Benz v. Celeste Fur Dyeing & Dressing Corp., 2 Cir., 156 F.2d 510, cert. denied 329 U.S. 736, 67 S.Ct. 101, 91 L.Ed. 635 (1946). In Sayles, 97 U.S. at 563–564, it was stated:

"Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, * * *, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."

There was in this case the intervening public use by the defendant prior to the amendment of July 30, 1956,

which first introduced the invention embodied in claim 4. Accordingly, claim 4 of the Oelbaum patent is invalid.

### C. Prior Public Sale

 Since the alleged inventive feature of claim 4 did not enter the case until July 30, 1956, claim 4 must take for its effective date the date of the amendment rather than that of the original application. Muncie Gear Works, Inc. v. Outboard Marine & Manuf. Co., 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 471 (1942); Ful-Vue Sales Co. v. American Optical Co., supra.

There was a prior public sale of the invention covered by claim 4 by the defendant on January 10, 1955, more than one year prior to the effective filing date to which claim 4 is entitled. 35 U.S.C. § 102(b); Muncie Gear, supra; Telechron, Inc. v. Parissi, D.C.N.D.N.Y. 1954, 120 F.Supp. 235, aff'd per curiam, 229 F.2d 440 (2nd Cir., 1956). Accordingly, claim 4 is invalid for prior public use or sale more than one year prior to the effective date to which claim 4 is entitled.

### CONCLUSIONS OF LAW

1. This action arises under the Patent Laws of the United States and the court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C. § 1338.

2. Claim 4 of the Oelbaum patent is invalid because anticipated by the Garson patent. 35 U.S.C. § 102(e).

3. Claim 4 of the Oelbaum patent is invalid because the subject matter of the claim would have been obvious to one skilled in the art at the time of the alleged invention. 35 U.S.C. § 103.

4. Claim 4 of the Oelbaum patent is invalid because the subject matter of the claim did not appear in the application as originally filed and was not described in the application until after the intervening public use of the invention by the defendant. Schriber-Schroth Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 573, 59 S.Ct. 8, 83 L.Ed. 34; Benz v. Celeste Fur Dyeing & Dress. Co., 2 Cir.,

156 F.2d 510, cert. denied, 329 U.S. 736, 67 S.Ct. 101, 91 L.Ed. 635 (1946).

5. Claim 4 of the Oelbaum patent is invalid because of the prior use or sale of the invention by the defendant more than one year prior to the effective date to which claim 4 is entitled. 35 U.S.C. § 102; Muncie Gear Works, Inc. v. Outboard Marine & Manuf. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171.

6. In view of the determination of invalidity of claim 4, there is no need to consider the issue of infringement.

7. The complaint is dismissed with costs to the defendant.

8. The defendant's counterclaim is granted to the extent of a declaratory judgment of invalidity of claim 4.

 9. In view of the evidence in this case, defendant is entitled to an award of reasonable attorneys' fees. 35 U.S.C. § 285. It is clear that the alleged invention which eventually became embodied in claim 4 was not disclosed in either the specification, the claims or the drawings as originally filed. A reading of the material originally filed by the plaintiff clearly indicates that the invention was to provide a method of vertical adjustment for brassieres which would eliminate the conventional clamps or buckles on the shoulder straps. It was only after the plaintiff examined the defendant's product that the material which eventually was embodied in claim 4 entered the application. It was precisely on this added material that the plaintiff premised this suit against the defendant. Defendant produces its garment under a patent which was both applied for and issued before the Oelbaum patent. These factors make this an exceptional case within the meaning of the statute. Defendant may make application for the award of reasonable attorneys' fees within 15 days on five days' notice. The amount of the fees will be determined at the time of the signing of the judgment and provision should be made for its inclusion therein.

Settle judgment on notice.