Nathaniel H. KOLMES and Harold F. Plemmons, Plaintiffs,

v.

WORLD ELASTIC CORPORATION and World Fibers Corporation, Defendants.

No. 4:93CV00719.

United States District Court, M.D. North Carolina, Salisbury Division.

Dec. 20, 1994.

Charles Robert Rhodes, Howard Arthur Maccord, Jr., David Daniel Beatty, Rhodes, Coats & Bennett, Greensboro, NC, for plaintiffs.

Judith E. Garmon, Charlotte, NC, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

OSTEEN, District Judge.

On August 31, 1994, a hearing was held on Plaintiffs' Motion for Preliminary Injunction Against Defendant World Fibers Corporation.[1] The court in denying the motion has considered the briefs and affidavits submitted by both parties and the evidence and arguments of counsel presented at the hearing and makes the following Findings of Fact and Conclusions of Law for purposes of this preliminary injunction hearing only. Any finding of fact that should be construed as a conclusion of law is adopted as such, and any conclusion of law that should be construed as a finding of fact is adopted as such.

## FINDINGS OF FACT

1. This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1338(a) (1993). Defendant's principal place of business is in the State of North Carolina, and venue is proper in this district in accordance with 28

---

1. This motion is for a preliminary injunction against Defendant World Fibers Corporation and not Defendant World Elastics Corporation. As such, the Defendant referred to throughout this document is World Fibers.

U.S.C. § 1400(b) (1993), as extended by 28 U.S.C. § 1391(c) (1993).

2. Plaintiff Nathaniel H. Kolmes is a citizen of the United States residing in Hickory, North Carolina. Plaintiff Kolmes is the owner of Supreme Corporation ("Supreme"), a manufacturer of specialty yarns.

3. Plaintiff Harold F. Plemmons is a citizen of the United States residing in Millers Creek, North Carolina. Plaintiff Plemmons is an owner of Golden Needles Knitting & Glove Company ("Golden Needles"), a manufacturer of cut-resistant gloves.

4. Defendant World Elastic Corporation ("World Elastic") is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Concord, North Carolina.

5. Defendant World Fibers Corporation ("World Fibers") is a corporation organized under the laws of the State of North Carolina, with its principal place of business in Concord, North Carolina.

6. In the original action before this court, Plaintiffs Kolmes and Plemmons filed a complaint against Defendant World Elastic, alleging infringement of their United States Patent No. 5,177,948 ("'948 patent"). An application for the '948 patent, Serial No. 823,088, was filed on January 15, 1992, and the '948 patent in suit was issued to Plaintiffs on January 12, 1993.

7. Defendant World Fibers was granted leave to intervene as a defendant in this action by order of this court on May 12, 1994.

8. The '948 patent discloses and claims a cut-resistant yarn to be knitted into a glove. The yarn consists of a core made of fiber and a covering wrapped around the core. At least one strand in the core is fiberglass, having a denier in the range of 375 to 1,000. The fiberglass is parallel to a second strand in the core, and in developing a commercially successful yarn, it was determined that the second strand should be a fiber called Spectra®, which is produced by Allied–Signal, Inc. ("Allied–Signal"). Spectra® is a fiber comprised of extended chain polyethylene. The non-metallic covering of the core consists of at least two strands that are unbraided and spirally wrapped in opposite directions around the core. The composite yarn has a composite denier of between 2,000 and 5,000. The covering is wrapped around the core at the rate of 8 to 12 turns per inch. (Pls.' Compl. Ex. A at col. 6.)

9. Between 1986 and 1988, Plaintiffs Kolmes and Plemmons worked together to develop a cut-proof yarn to be manufactured into gloves. In the meat-packing industry, a cut-resistant glove is used to protect workers from injuries caused by sharp knives.

10. Early cut-resistant yarns were comprised of wire which had certain drawbacks. Plaintiffs Kolmes and Plemmons worked together to find alternate materials for these yarns.

11. The first such yarn, identified as Sample No. 80(519–A), was manufactured by Plaintiffs in June 1987, and shipped to Golden Needles to be knitted into gloves. However, these gloves were not as soft as desired.

12. On June 15, 1987, a second sample was manufactured by Supreme and shipped to Golden Needles to be knitted into gloves. When these gloves were tested by consumers, it was found that undesirable properties developed when the gloves were laundered.

13. A third sample, identified as Style 518–A–P–1, was manufactured by Supreme on May 17, 1988. This new sample was developed to reduce the cost of the yarn. Upon fabrication into gloves at Golden Needles, the yarn was found to be suitable for cut-proof gloves. Defendant's evidence of sampling in early September 1988, by Paul Weber is also an indication of the success of this product. (Def.'s Hr'g Ex. 1 at 1.)

14. Plaintiffs' Exhibit 2 (Hr'g Ex.) is a worksheet dated May 17, 1988, that details a Spectra® fiberglass sample. Plaintiffs' Exhibit 5 (Hr'g Ex.) is a Golden Needles cost sheet dated May 19, 1988, for a sample of the Spectra® fiberglass product.

15. The invention described and claimed in the '948 patent was reduced to practice around May 17, 1988.

16. Defendant's Exhibit 1 (Hr'g Ex.) is a copy of the sales inquiry records from Paul Weber's company. There are two sales rec-

ords dated September 11, 1988, and four sales records dated February 21, 1989. All six records document the sale of yarn having a Spectra® fiberglass core and a covering comprised of Spectra® wrapped in two directions. (Def.'s Hr'g Ex. 1.)

17. Allied–Signal is the owner of United States Patent No. 4,886,691 ("Wincklhofer patent") issued to Robert C. Wincklhofer on December 12, 1989. The application for the Wincklhofer patent was first filed on June 12, 1986, and followed by two continuation-in-part applications. The Wincklhofer patent discloses a cut-resistant jacket.

18. Allied–Signal is also the owner of United States Patent No. 5,119,512 ("Dunbar et al. patent") issued to Dunbar et al. on June 9, 1992. The application for the Dunbar et al. patent was a continuation-in-part of an application, Serial No. 249,523, filed September 26, 1988, which was a continuation-in-part of Serial No. 140,530, filed January 4, 1988, which was a continuation-in-part of Serial No. 873,669, filed June 12, 1986. The second embodiment of the Dunbar et al. patent is directed to a cut-resistant yarn.

19. Defendant filed a Request for Reexamination of United States Patent No. 5,177,948 on March 1, 1994. In the request for reexamination, Defendant cited both the Wincklhofer and the Dunbar et al. patents as prior art possibly raising a substantial new question as to the patentability of the '948 patent in suit. The Patent and Trademark Office ("PTO") found that the Wincklhofer patent did not raise a substantial new question as to the patentability of the '948 patent in suit, consistent with the findings of this court. However, on April 19, 1994, the PTO granted the request for reexamination on the basis that the Dunbar et al. patent raised a substantial new question as to patentability.

20. On August 5, 1994, the PTO examiner rejected all of the claims of the '948 patent under 35 U.S.C. § 103 (1984 & Supp.1994), which is the basis for an obviousness rejection. The examiner found that as a result of the disclosures in the Dunbar et al. patent, the subject matter of the '948 patent would have been obvious to one of ordinary skill in the art.

21. The relevant disclosures in the Dunbar et al. patent were first added in the continuation-in-part application filed on September 26, 1988. As this court found earlier, the '948 patent was reduced to practice before September 26, 1988, and this court therefore concludes that the Dunbar et al. patent is not prior art and does not invalidate the claims of the '948 patent.

22. Defendant World Fibers was established in 1990 and shortly thereafter began making a yarn for Lakeland Industries at the request of the President of Lakeland Industries, Ray Smith. (Tr. at 73.) Smith sent World Fibers a sample of yarn manufactured and sold by Supreme for Defendant to copy. (Tr. at 117.) Within a month, a product was developed at World Fibers using a technique described by Vice President of Product Development, Gregory Andrews, as "reverse engineering" of the Supreme yarn. (Tr. at 118.)

23. Defendant World Fibers has admitted to making products designated SAFE KNIT–ULTRA and SAFE KNIT–ULTRA LITE, being the alleged infringing yarns. These cut-resistant yarns are made from a combination of fiberglass and Spectra®.

24. In 1993, Defendant World Fibers began selling this yarn to Hawkins Company, also known as Safe Industries, to be knit into a glove sold by Ansell Edmont Corporation.

25. Safe Industries sold gloves at a price substantially below the price charged by Golden Needles. As a result, Golden Needles had to reduce its price by about $1.00 per glove in the fall of 1993. (Tr. at 60–61.)

26. Plaintiff Kolmes' affidavit reveals that the style designation SAFE KNIT–ULTRA consists of a core and covering. (Pls.' Ex. 1 at 6.) That affidavit further shows that the core contains one end of 650 Spectra® and one end of 75 fiberglass. The bottom covering, according to Plaintiff Kolmes, is 650 Spectra® at 8 to 10 turns per inch, and the top covering is 650 Spectra® at 6 to 9 turns per inch. The composite denier is 3195. *Id.*

27. Andrews testified that SAFE KNIT–ULTRA had a top covering of no more than 7 to 7½ turns per inch and that there was no

significant difference between his yarn and the yarn sold by Supreme. (Tr. at 80, 123.)

28. The SAFE KNIT–ULTRA product performs substantially the same function in substantially the same way to achieve substantially the same result as the patented yarn. (Tr. at 120–23.)

29. Andrews testified that SAFE KNIT–ULTRA LITE has a "375 core with a G–450 fiberglass, which is equivalent to 100 denier, and it is wrapped with 150 textured poly" (referring to polyester). (Tr. at 81.) The yarn is double-wrapped with a composite denier of 800 and has 8½ to 9 turns per inch. *Id.*

30. Defendant World Fibers is a small, closely held corporation that leases employees from World Elastics. The officers of World Fibers do not take salaries. (Tr. at 109.)

31. Andrews testified that if World Fibers were found liable in this matter, it could not pay a judgment of $1,000,000.00. (Tr. at 104.) He also testified that the corporation could pay a judgment of $500,000.00, but was uncertain about the corporation's ability to pay a $750,000.00 judgment. (Tr. at 104–05.) Assets of the corporation include about $30,-000.00 in machinery, $100,000.00 in raw material inventory, subject to accounts payable of about $50,000.00, and $30,000.00 in finished goods inventory. Andrews testified that the company has $350,000.00 in accounts receivable. (Tr. at 105–08.)

32. Andrews testified that cut-proof yarn made up 75% of World Fibers' production and only about 20% of that production is the double-wrapped yarn that is the subject of this lawsuit. (Tr. at 92–93.) Thus, only about 15% (20% × 75%) of World Fibers' production is alleged to infringe the '948 patent.

33. Plaintiffs have alleged damages in the approximate amount of $700,000.00. Damages in the amount of $300,000.00 have already accrued based upon the estimate of a $10,000.00 loss per week through the first 30 weeks of 1994. (Tr. at 61–62.) Utilizing this theory, Plaintiffs allege damages in the amount of $220,000.00 for the remaining 22 weeks in 1994. Assuming that trial will be completed by May 15, 1995, an additional $190,000.00 in damages will have accrued.

34. The damage estimate is conservative, as it is based on the reduction in price of Plaintiffs' goods as a result of the alleged infringement. (Tr. at 60–61.)

35. These damages are considerably more than the $500,000.00 award Defendant has shown to have the capacity to pay. Accordingly, this court finds that if an injunction is not entered the damages awarded will likely exceed Defendant World Fibers' ability to pay.

## CONCLUSIONS OF LAW

1. Rule 65, Federal Rules of Civil Procedure, provides for the issuance of a preliminary injunction prior to trial. The standard to be applied in determining the applicability of a preliminary injunction in a patent case is detailed in *New England Braiding Co. v. A.W. Chesterton Co.,* 970 F.2d 878 (Fed.Cir. 1992). In *New England,* the court stated that:

[T]o obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto in light of the following factors: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction is in the public interest.

*Id.* at 882 (citing *Nutrition 21 v. United States,* 930 F.2d 867, 869 (Fed.Cir.1991)).

2. The court concludes that the evidence does not allow a finding that Plaintiffs Kolmes and Plemmons are likely to succeed on the merits.

(a) Plaintiffs Kolmes and Plemmons are the owners of the '948 patent.

(b) Literal infringement is found when the accused device embodies all the elements of the claimed invention. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282 (Fed. Cir.1986); *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1171 (Fed.Cir.1993). Although one or more of the claims in the '948

patent in suit may encompass the yarn designated as SAFE KNIT–ULTRA, the court acknowledges that there may not be eight turns per inch in the covering of Defendant's SAFE KNIT–ULTRA product. However, this difference would appear to be immaterial because a covering of 7 to 7½ turns per inch would perform substantially the same function in substantially the same way to produce substantially the same result as the eight wraps in the '948 patent. (Tr. at 120–23.) Thus, if the SAFE KNIT–ULTRA product does not literally infringe Plaintiffs' patent, it does infringe under the doctrine of equivalents. *See Spindelfabrik Suessen–Schurr, Stahlecker & Grill v. Savio S.p.A.*, 778 F.Supp. 839, 862 (W.D.N.C.1991) (holding that the doctrine of equivalents requires that the accused device perform "substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result" as the patented invention); *Black & Decker, Inc. v. Hoover Serv. Center*, 886 F.2d 1285, 1293–94 (Fed.Cir.1989). The same analysis may also apply with respect to the difference in the denier of the SAFE KNIT–ULTRA LITE product and the denier in the '948 patent. However, the evidence presented does not address this issue, and the court cannot conclude that SAFE KNIT–ULTRA LITE infringes the '948 patent under the doctrine of equivalents. The difference in denier also requires this court to conclude that SAFE KNIT–ULTRA LITE does not literally infringe the '948 patent.

■ (c) To obtain a preliminary injunction, Plaintiffs must show that the alleged infringer's defenses lack substantial merit. *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed.Cir.1992). Defendant has raised several different arguments for the invalidity of the '948 patent. First, Defendant argues that Plaintiffs' patent is invalid over three items of prior art. Each item was cited to the PTO in its request for reexamination. The PTO ruled that two of these

references, the Wincklhofer patent and the Kaleidoscope Newsletter,[2] did not raise a substantial new question as to the validity of the '948 patent. The PTO did reexamine the '948 patent, citing the Dunbar et al. patent as the relevant prior art, and upon this reexamination, the '948 patent was rejected. However, a patent can be prior art so as to invalidate another patent only if the effective filing date of the patent that is prior art is before the date of invention of the patent sought to be invalidated. 35 U.S.C. § 102(e) (1984); *Oelbaum v. Lovable Co.*, 211 F.Supp. 594 (S.D.N.Y.1962), *aff'd*, 322 F.2d 1022 (2d Cir.1963). This court has received testimony that Plaintiffs invented the yarn prior to the earliest relevant date of the Dunbar et al. patent. (Tr. at 19, Pls.' Ex. 1 at 4, Pls.' Ex. 4 at 2.) In addition to the testimony given, this court has received documentary evidence in the form of a worksheet dated May 17, 1988, (Pls.' Hr'g Ex. 2), and a Golden Needles cost sheet dated May 19, 1988, (Pls.' Hr'g Ex. 5), that detail a sample of the Spectra® fiberglass product. After reviewing all the evidence, the court is left with an abiding conviction that Plaintiffs Kolmes and Plemmons invented the subject matter of the '948 patent prior to September 26, 1988, the date of filing of the relevant disclosure in the Dunbar et al. patent. As such, the Dunbar et al. patent is removed as prior art.

■ Defendant has also argued that the '948 patent is invalid because the invention was "in public use or on sale in this country" more than one year prior to the date of the application for a patent in the United States. 35 U.S.C. 102(b) (1984). An invention is not considered "on sale" within the meaning of section 102(b) if the "sale was primarily for a bona fide experimental purpose to perfect the invention, rather than for commercial exploitation." *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1185 (Fed.Cir.1993).

■ In this case, the claims on which Plaintiffs rely were first submitted to the

---

**2.** The Kaleidoscope Newsletter was a piece of prior art raised by Defendant in the request for reexamination.

PTO on January 15, 1992. Although the first application was filed on June 13, 1989, the application does not claim the yarn that is the subject of this lawsuit and does not disclose the use of extended chain polyethylene. Indeed, the 1989 application teaches against the use of Spectra®, an extended chain polyethylene, in the core of the yarn. The covering of the yarn claimed in the 1989 application must have one strand of fiberglass. The '948 patent does not require a covering of fiberglass, and the covering of the yarn that is the subject of this suit is not comprised of fiberglass. Due to the differences in the 1989 and 1992 applications, Plaintiffs are not entitled to the benefit of the June 13, 1989, filing date. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1233 (Fed.Cir. 1985) (stating that application must "adequately disclose" new matter added in a subsequent application to receive the benefit of the earlier filing date.)

 Director of Purchasing at Golden Needles, Jerry C. Pratt, testified that there were sales of sample quantities of gloves made in August 1987 (Tr. at 64); however, he stated that these gloves were not commercially successful because when the gloves were laundered, the fiberglass ends became exposed. As a result, when the gloves were worn, red spots or other skin irritations would develop. Pratt therefore indicated that "a lot more work" was required to develop a final product. (Tr. at 66–67.) Based upon preliminary evidence presented at the hearing, the court concludes that these sales were experimental. Pratt also testified that sales of the improved glove were made around May or June 1988, and that these would have been small sample quantities. (Tr. at 67.) In addition, the Weber Sales Inquiry introduced by Defendant indicates two dates of sale—September 11, 1988, and February 21, 1989 (Def.'s Hr'g Ex. 1.) The two records dated September 11, 1988, were for the sale of yarn having a core of fiberglass and Spectra® and a covering of Spectra® wrapped in two directions. One of these records, although labeled a sample sale in the upper right-hand corner, requests as much of the yarn as can be produced, and the second record requests a quote for 500 pounds. The four records dated February 21, 1989, also detail a yarn with a fiberglass Spectra® core and a covering of two strands of Spectra®. Three of these records document the sale of 10 to 20 pounds, and another documents the sale of 100 pounds of the product. After reviewing these records, the court concludes that sales occurred in 1988 and 1989, more than one year prior to the date (1992) of the application for a patent in the United States, and Plaintiffs have not shown that this defense lacks substantial merit.

Defendant also alleges that Plaintiffs were not the first to invent the patented yarn, as required by 38 U.S.C. § 102(a). However, the court has not found evidence of a prior date of invention by any other party. Defendant attempts to assert that Allied–Signal was the first to invent the product, but no date of invention by Allied–Signal has been proffered. *See Price v. Symsek,* 988 F.2d 1187, 1190 (Fed.Cir. 1993) (stating that "priority of invention does not question whether the patentee 'invented' the subject matter of the count, but instead focuses on which party *first* invented the subject matter of the count").

Similarly, Defendant asserts that Plaintiffs did not invent the product but copied the invention from Allied–Signal. Plaintiff Kolmes testified that he manufactured gloves and supplied them to Allied–Signal through a middleman, Paul Weber. (Tr. at 39.) Plaintiff Kolmes also stated that the gloves supplied were the product that he had developed, (Tr. at 40), and that Weber merely supplied him with the Spectra® needed to make the gloves. (Tr. at 46.) This is also evidenced by the September 11, 1988, sales records of Paul Weber's company. (Def.'s Hr'g Ex. 1 at 1.)

In conclusion, the court has reviewed the entire record, and for the reasons discussed above, the court concludes that Plaintiffs have not shown that the statutory bar defense raised by Defendant lacks substantial merit.

Accordingly, this court concludes that Plaintiffs have not established a likelihood of success on the merits. Ordinarily, having

found against Plaintiffs on this factor, the court would cease its review. However, in the interest of completeness, the other relevant factors will be considered.

3. If there has been a clear showing of patent validity and infringement, irreparable harm may be presumed. *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1271 (Fed.Cir.1985). As previously discussed, there is no such clear showing in this case. However, if the injunction is not granted, damages may grow to an amount that exceeds Defendant's ability to pay, leaving Plaintiffs an irreparable loss. Plaintiffs are suffering a loss of at least $10,000.00 per week, and if trial is not completed until May 15, 1995, Plaintiffs allege damages of about $700,000.00. If exceptional circumstances are found under 35 U.S.C. §§ 284–85 (1984), the damages could be trebled to $2,100,000.00 and attorneys' fees could be assessed. Defendant World Fibers has demonstrated an ability to pay only about $500,000.00 in damages, and as such, this court finds that had Plaintiffs shown a likelihood of success on the merits they would suffer irreparable harm if an injunction were not granted.

4. The balance of hardships favors Plaintiffs. World Fibers has no employees, and its officers receive no salaries. (Tr. at 109.) Thus, if the injunction were granted, Defendant could lease fewer employees, but no employees would be laid off by World Fibers. Moreover, the alleged infringing yarn comprises only 15% of Defendant's products, and it is possible that Defendant's machinery and inventory could be used to make other non-infringing goods, i.e., the other 85% of Defendant's production. Conversely, the denial of an injunction could cause Plaintiffs to suffer a substantial loss, and World Fibers may not be able to compensate for this loss if damages are in excess of $500,000.00.

5. Congress has been granted the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. 1, § 8, cl. 8. Pursuant to this grant of power, Congress has enacted the patent system, and this system is designed to encourage the disclosure of an invention to the public by granting the owner the right to exclude others from making, using, and selling the patented invention. 35 U.S.C. § 271(a) (1984). The court finds that the public has an interest in the protection of valid patents. Since Plaintiffs have failed to establish patent validity and a likelihood of success on the merits, the court finds that the public interest here favors the denial of the injunction.

## CONCLUSION

Based on Plaintiffs' failure to establish a likelihood of success on the merits, this court will deny Plaintiffs' Motion for Preliminary Injunction Against Defendant World Fibers Corporation.

An order in accordance with these findings of fact and conclusions of law shall be filed contemporaneously herewith.